1               UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2
   * * * * * * * * * * * * * * *   )
3  UNITED STATES OF AMERICA,       )    Criminal Action
                                   )    No. 19-MJ-00215
4                  Plaintiff,      )
                                   )
5     vs.                          )
                                   )
6  SADIE BACA,                     )    Washington, DC
                                   )    September 3, 2019
7                  Defendant.      )    2:34 p.m.
                                   )
8  * * * * * * * * * * * * * * *   )

9

10            TRANSCRIPT OF PRELIMINARY/DETENTION HEARING
            BEFORE THE HONORABLE ROBIN M. MERIWEATHER,
11               UNITED STATES MAGISTRATE JUDGE
          (TRANSCRIBED FROM THE FTR-GOLD AUDIO RECORDING)

12

13
   APPEARANCES:
14
   FOR THE GOVERNMENT:      KENYA DAVIS, ESQ.
15                          UNITED STATES ATTORNEY'S OFFICE
                              FOR THE DISTRICT OF COLUMBIA
16                          555 Fourth Street, NW
                            Eleventh Floor
17                          Washington, DC 20530

18 FOR THE DEFENDANT:       H. HEATHER SHANER, ESQ.
                            LAW OFFICES OF H. HEATHER SHANER
19                          1702 S Street, Northwest
                            Washington, DC 20009
20
   FOR PRETRIAL SERVICES:   CHRISTINE SCHUCK
21
   TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
22                          Official Court Reporter
                            United States District Court for the
23                            District of Columbia
                            333 Constitution Avenue, NW
24                          Room 6706
                            Washington, DC 20001
25                          (202) 354-3269

<u>I N D E X</u>

|  | Direct | Cross | Red. |
|---|---|---|---|

<u>WITNESSES FOR THE GOVERNMENT:</u>

Jeremiah Johnson                4          8          17

1            THE COURTROOM DEPUTY:  Magistrate Case No.

2    2019-215-M, the United States of America versus Sadie Baca.

3            Kenya Davis representing the Government; Heather

4    Shaner representing the Defendant.  Christine Schuck is the

5    pretrial services officer.  The Defendant is present in the

6    courtroom.

7            This case is set on the calendar for a preliminary

8    hearing and a detention hearing.

9            THE COURT:  This matter is set for a preliminary

10   and detention hearing.

11           How do the parties wish to proceed today?

12           MS. SHANER:  We wish to proceed with the hearings,

13   your Honor.

14           THE COURT:  Did the Government prepare a

15   memorandum regarding pretrial detention?

16           MS. DAVIS:  We did prepare that memorandum, and it

17   was sent to Judge Harvey's chambers.  I don't know if it has

18   yet been filed.  I can double-check.

19           THE COURT:  Okay.

20           THE COURTROOM DEPUTY:  I can print that out for

21   you, Judge.

22           THE COURT:  Thank you.

23           Okay.  We should do the preliminary hearing

24   portion of the hearing first, as if there is not probable

25   cause, there would be nothing to hold a detention hearing

1     about.

2              Is there a witness or witnesses that the

3     Government wishes to present?

4              MS. DAVIS:  Yes, your Honor.  The Government calls

5     Detective Jeremiah Johnson.

6              THE COURT:  Thank you.

7              THE COURTROOM DEPUTY:  Right over here, sir.

8         JEREMIAH JOHNSON, GOVERNMENT WITNESS, SWORN.

9              THE COURTROOM DEPUTY:  Thank you.  You may be

10    seated.

                         DIRECT EXAMINATION

11

12    BY MS. DAVIS:

13    Q.  Detective, in a loud, clear voice, could you give us

14    your full name and spell it for the record, please.

15    A.  Jeremiah Johnson, J-E-R-E-M-I-A-H; Johnson,

16    J-O-H-N-S-O-N.

17    Q.  And, Detective Johnson, where do you work?

18    A.  The Metropolitan Police Department.

19    Q.  How long have you been with the Metropolitan Police

20    Department?

21    A.  Ten years.

22    Q.  And what unit are you a part of?

23    A.  I currently work for the FBI's Child Exploitation and

24    Human Trafficking Task Force.

25    Q.  And how long have you been with that task force?

1    A.   Three years.

2    Q.   I want to draw your attention to a case involving a

3    Mr. Terrell Armstead and a Ms. Sadie Baca.

4              Were you involved in the investigation of that

5    case?

6    A.   Yes.

7    Q.   And what was your involvement in that case?

8    A.   The lead detective.

9    Q.   And how long have you been investigating that case,

10   would you say?

11   A.   Since, I think, May 2018.

12   Q.   During the course of your investigation, did you have an

13   opportunity to interview or talk with a Ms. Sadie Baca?

14   A.   Yes.

15   Q.   Do you see that person in the courtroom here today?

16   A.   Yes.

17   Q.   Could you identify that person by an article of clothing

18   and location.

19   A.   Wearing the orange jumpsuit next to defense counsel.

20             MS. DAVIS:  Your Honor, may the record reflect an

21   in-court identification of the Defendant?

22             THE COURT:  Yes.  The record shall so reflect.

23   BY MS. DAVIS:

24   Q.   During the course of your investigation of this case,

25   Detective Johnson, did you prepare a statement of facts to

1    support a criminal complaint charging Ms. Sadie Baca with

2    conspiracy to commit sex trafficking by force, fraud or

3    coercion and also obstruction of justice?

4    A.  Yes.

5    Q.  Have you had an opportunity to review that statement of

6    facts?

7    A.  Yes.

8    Q.  If given the opportunity, would you adopt that statement

9    of facts as a portion of your testimony here today?

10   A.  Yes.

11          MS. DAVIS:  Your Honor, if I may, I would like to

12   show this to the detective and have him adopt it as a

13   portion of his testimony here today.

14          THE COURT:  Is there any objection from the

15   defense?

16          And just for clarification, this is a statement of

17   facts that was signed and sworn before Judge Harvey on

18   August the 15th of 2019?

19          MS. DAVIS:  That's correct, your Honor.

20          THE COURT:  Okay.

21          MS. DAVIS:  Yes.

22   BY MS. DAVIS:

23   Q.  Having had an opportunity to look again at that

24   statement of facts, would you adopt it as a portion of your

25   testimony here today, Detective Johnson?

1   A.  Yes.

2   Q.  During the course of your investigation, have you found

3   any of the facts that are there included to be untrue?

4   A.  No.

5   Q.  Any contradictory facts?

6   A.  No.

7        MS. DAVIS:  The Court's indulgence.

8   BY MS. DAVIS:

9   Q.  During the course of your investigation, have you had an

10  opportunity to -- and this goes to detention; but since

11  you're on the stand, I want to ask you this question.

12       During the course of your investigation, have you

13  had an opportunity to talk with probation officers from

14  Montgomery County about Ms. Baca or learned from other

15  agents what Ms. Baca's violations have been in Montgomery

16  County.

17  A.  Yes.

18  Q.  And what have those violations been?

19  A.  I know she had to check in with her probation officer,

20  which she hasn't done.  I don't know when she was put on

21  probation, but she was in Montgomery County and she hadn't

22  checked in.  So they violated her probation.

23  Q.  And so in fact, when she was arrested, you had to go and

24  get her from Montgomery County.  Is that correct?

25  A.  Correct.

1          MS. DAVIS:  On that, the Government would submit.

2     I have no further questions for this witness.

3          THE COURT:  Okay.  Does the defense have any

4     questions for this witness?

5          MS. SHANER:  Yes, ma'am.

6          THE COURT:  Okay.

7                    CROSS-EXAMINATION

8     BY MS. SHANER:

9     Q.  Are you the same Jeremiah Johnson who began

10    investigating criminal acts of Terrell Armstead?

11    A.  Yes.

12    Q.  And in May of 2019, did you file a criminal complaint

13    where Terrell Armstead is charged with trafficking a

14    juvenile under the age of 18?

15    A.  Yes.

16    Q.  And was that juvenile not Ms. Baca?

17    A.  Was not?  You're asking, is it Ms. Baca or not?  Is that

18    the question?

19    Q.  Was it Ms. Baca?

20    A.  Yes.

21    Q.  So between January -- June of 2015 and August of 2016,

22    it was your belief based on your investigation that Sadie

23    Baca was a child victim of sexual exploitation?

24    A.  Yes.

25    Q.  And that was your belief when you filed this criminal

1    complaint in May of this year?

2    A.  Yes.

3    Q.  During the course of your investigation, you interviewed

4    individuals who told you that between January of 2018 and

5    December of 2018, Terrell Armstead was armed and dangerous?

6    A.  He did get -- we have known him to have firearms.  Yes.

7    He was dangerous.

8    Q.  In fact, he was known to have multiple firearms.

9    Correct?

10   A.  Yes.

11   Q.  And during the course of your investigation, you learned

12   from interviews of witnesses, specifically witness O.S.,

13   who's alleged in the criminal complaint against Ms. Baca,

14   that this very same Terrell Armstead held a gun on O.G.'s

15   [sic] head.  Correct?

16   A.  Correct.

17   Q.  And put a gun inside Ms. Baca's mouth?

18   A.  Correct.

19   Q.  And you learned that O.G. witnessed Mr. Armstead

20   physically injure Ms. Baca?

21   A.  Yes.

22   Q.  In the spring of this year, based on your investigation,

23   the victim of Mr. Armstead was Sadie Baca.  Correct?

24   A.  Yes.

25   Q.  Between June of 2015 and August of 2016, did you find

1    any evidence that Ms. Baca was behaving -- was working for

2    Mr. Armstead at his direction in the sex trade?

3    A.   Yes.

4    Q.   And did you find evidence that past August of '16 -- and

5    that becomes important, because that's when Ms. Baca

6    achieved a certain age.  Is that right?

7    A.   Yes.

8    Q.   Did you find any evidence that she was under force or

9    coercion of Mr. Armstead?

10   A.   Yes.

11   Q.   After August of 2016 --

12   A.   Yes.

13   Q.   -- did you find information that Terrell Armstrong had

14   stopped being violent and dangerous?

15   A.   No.

16   Q.   Did you find information that after August of 2016,

17   Mr. Armstead stopped using guns?

18   A.   No.  I mean, I don't know anything about 2016 and what

19   his gun use is.  But we know, obviously, he was arrested for

20   a drug -- I mean, a gun offense.

21   Q.   When is the most recent time that you know he was known

22   to be using, carrying and transporting firearms?

23   A.   Since my investigation, which began May 2018.

24   Q.   And is that case currently pending in this courthouse?

25   A.   The gun case?

1    Q.  Yes, sir.

2    A.  Yes, it is.

3    Q.  Since Mr. Armstead was incarcerated, have you learned

4    that he was nonetheless able to call Ms. Baca on the phone

5    and instruct her what she should do?

6    A.  Yes.

7    Q.  And have you listened to phone calls where he told her

8    not to testify in the grand jury that he was a violent pimp?

9              MS. DAVIS:  Objection as to form.

10             MS. SHANER:  I'm sorry.  I didn't hear the

11   objection.

12             THE COURT:  As to form.

13             MS. DAVIS:  Objection as to form.

14   BY MS. SHANER:

15   Q.  Did you listen to his phone calls from the jail to

16   Ms. Baca?

17   A.  Yes.

18   Q.  And in those phone calls, he instructed her what she

19   should do as to the grand jury subpoena?

20   A.  Yes.  About testifying about the grand jury, yes.

21   Q.  And he told her not to testify before the grand jury.

22   Is that correct?

23   A.  No.

24   Q.  He told her not to testify -- he told her to testify in

25   a certain way before the grand jury.  Is that correct?

1    A.  He told her what to say.

2    Q.  He told her what to say.  Correct.

3           In November of 2018, your office reported an

4    interview with Ms. Stebbens.  Is that correct?

5    A.  Yes.

6           MS. SHANER:  I request that as *Jencks*.

7    BY MS. SHANER:

8    Q.  Do you -- you know about that.  That was part of your

9    investigation.  Right?

10   A.  The interview?

11   Q.  Yeah.

12   A.  Yes.

13   Q.  That DiMauro had with her.

14   A.  What specific -- we did an interview with her, yes.

15   Q.  It's in your report.  Just a second.

16           MS. SHANER:  Your Honor, may I approach?

17           THE COURT:  With what?

18           THE COURTROOM DEPUTY:  Defense Exhibit 1 marked

19   for identification.

20           THE COURT:  Is there any objection?

21           MS. DAVIS:  Yes, your Honor.  I'll proffer for the

22   record that this interview has in fact been included in the

23   discovery that was provided to the defense via [inaudible].

24           Moreover, I think although Ms. DiMauro was there

25   as an agent, Detective Johnson was there as well.  So

1   it's -- to say that it's an interview that he should have

2   knowledge of is fine.  It's just that she had an interview

3   with him.

4                THE COURT:  And is this -- are you -- because I

5   haven't seen the document.  Are you proposing to refresh his

6   recollection?

7                MS. SHANER:  Yes, your Honor.

8                THE COURT:  Okay.  Thank you.

9   BY MS. SHANER:

10  Q.  Does this your recollection [sic] about a recorded

11  interview with Ms. Stebbens?

12  A.  Yes.

13  Q.  Okay.  In November of 2018, did you have a telephone or

14  an audio-video -- did you have a conference with

15  Ms. Stebbens?

16  A.  The interview was in person.  And we audio-recorded the

17  interview, yes.

18  Q.  I'm sorry?

19  A.  The interview was in person and we recorded it by audio.

20  Q.  Okay.  And at that time, did she tell you that she was

21  in fear of Mr. Armstead?

22  A.  Yes.

23  Q.  And did she tell you there was a young girl who had been

24  working with him since she was 16?

25  A.  Yes.

1    Q.  And was she referring to Ms. Baca?

2    A.  Yes.

3    Q.  And did she explain to you about violence that

4    Mr. Armstead had directed at each of them?

5    A.  Yes.

6    Q.  When did Ms. Baca become a co-conspirator and voluntary

7    participant instead of a victim of Mr. Armstead?

8            MS. DAVIS:  Objection.  Argumentative.

9    BY MS. SHANER:

10   Q.  Was there a date when you made a decision that Ms. Baca

11   was no longer a victim but was the subject of a criminal

12   complaint as a co-conspirator?

13   A.  We were always [inaudible] investigating through the

14   whole process until we knew that part of Ms. Baca's

15   behaviors involved in criminal activity.  We did invite her

16   in to be a willing participant.  And we explained it to her

17   every single time that -- as we were going through this

18   process, "We're offering you an opportunity to talk with

19   us."  But we did always inform her that she was always under

20   the purview of criminal charges that she had committed.

21   Q.  And she was charged by criminal complaint in August of

22   this year.  Is that correct?

23   A.  Yes.

24   Q.  And at that point, she was no longer considered to be a

25   victim?

1    A.  Like I said, we prepared an arrest warrant for her, an

2    affidavit and a statement of facts charging her with the

3    offense.  Yes.

4    Q.  Do you have any evidence that any action by Ms. Baca was

5    voluntary and knowing and not the product of duress?

6              MS. DAVIS:  Objection.

7              THE COURT:  Could you rephrase your question so

8    that you're not asking him to make legal conclusions?  You

9    may have to break it down.

10   BY MS. SHANER:

11   Q.  During the course -- you've been on this investigation

12   starting when?

13   A.  Since the beginning, which is, like I said, like last

14   May, May 2018.

15   Q.  2018.  Okay.

16              Since May '18, what evidence do you have that

17   actions by Ms. Baca were -- that she voluntarily and

18   knowingly joined a conspiracy with Terrell Armstead to

19   violate 18, US Code, 1591?

20   A.  What evidence do I have?  I mean, she's admitted it

21   several times.  She's always admitted she's been cooperating

22   with him.  So, I mean, she said it multiple times to us in

23   our investigations.

24   Q.  What evidence do you have that any cooperation was

25   voluntary and knowing?

```
 1                 MS. DAVIS:  Objection.

 2                 THE COURT:  I think he just asked -- answered your

 3      question already.  Could you maybe rephrase or ask a

 4      different question?

 5      BY MS. SHANER:

 6      Q.  Do you have any specific evidence that Ms. Baca chose

 7      intentionally to -- I'll withdraw that question.

 8                 MS. SHANER:  No further questions.

 9                 THE COURT:  Thank you.

10                 MS. SHANER:  I do have two more questions.  I'm

11      sorry.

12                 THE COURT:  Okay.  You can come back.

13      BY MS. SHANER:

14      Q.  In the course of your investigation, did you learn that

15      Ms. Stebbens was, in fact, older than Ms. Baca?

16      A.  Yes.

17      Q.  And did you learn from Ms. Stebbens that she came to DC

18      voluntarily to work for Armstead?

19      A.  Yes.

20      Q.  And did you learn from Ms. Stebbens that she did this

21      because she was no longer satisfied with the gentleman she

22      was working for in the sex trade?

23      A.  Yes.

24                 MS. SHANER:  I have no further questions.

25
```

1                    REDIRECT EXAMINATION

2    BY MS. DAVIS:

3    Q.  Detective Johnson, during the course of your

4    investigation, did you learn that Ms. Baca was involved in

5    the movement of guns that Terrell Armstead had purchased or

6    was trafficking?

7    A.  Yes.

8    Q.  And when was she involved in that trafficking of guns?

9    A.  I'd have to refer to this note to see the exact day.

10   But I know it was a similar time we started the

11   investigation.

12   Q.  You can use the exhibit to refresh your recollection.

13   Then just look up at me after.

14            Did you refresh your recollection?

15   A.  Yes.

16   Q.  Okay.  And when was that time?

17   A.  So the ATF's case with -- involving Terrell Armstead

18   began in July 2018.  So it was just prior to that.  This is

19   not an exact date of when -- the transaction, but it was

20   just prior to July 2018.

21   Q.  And once Mr. Armstead was actually incarcerated on that

22   case, was Ms. Baca still involved in moving those weapons?

23   A.  Yes.

24   Q.  Now, Ms. -- well, the witness -- Witness 1, O.S., when

25   she came to testify, what, if anything, did she say about

1    Ms. Baca's involvement in her trafficking situation?

2    A.   She said that she was -- Ms. Baca was the one in charge,

3    kind of explained all the rules, was always with her, was

4    always reporting back to Terrell about everything that was

5    going on, was definitely the intermediary, was the one who

6    would collect the money.  Also, anytime that O.S. didn't do

7    what was seen as right, Ms. Baca would be the one who would

8    report back to Mr. Armstead about what exactly she was not

9    doing correct.

10   Q.   And when Ms. -- when O.S. left Armstead and Baca, did

11   Baca attempt to go with O.S.?

12   A.   No.

13   Q.   And just so the Court is clear, when was Mr. Armstead

14   placed into custody?

15   A.   September 2018.

16   Q.   And when was the first time that Ms. Baca was subpoenaed

17   to testify before the grand jury?

18   A.   January 2019.

19   Q.   When was the last time that she was to testify before

20   the grand jury?

21   A.   Can I look at my paperwork quickly and find the date?

22   Q.   That's fine.  You can use it to refresh your

23   recollection.

24   A.   Okay.  I'm ready.

25   Q.   Yes.

1    A.  It was May 31st, 2019.

2    Q.  During the time from September 2018 to May 31st, 2019,

3    did you know Mr. Armstead to ever be out of custody?

4    A.  No.

5           MS. DAVIS:  I have no further questions, your

6    Honor.

7           THE COURT:  Thank you.

8           Did you have any other witnesses?

9           MS. DAVIS:  No, your Honor.

10          THE COURT:  Okay.  Thank you.

11          You may be excused.

12          (Witness excused.)

13          THE COURT:  Ms. Davis, could you tell me what the

14   elements are of the charges against Ms. Baca and briefly

15   identify the evidence that matches up with that?

16          MS. DAVIS:  Yes, your Honor.

17          So the first charge for Ms. Baca is that between

18   January of 2018 and December of 2018, she conspired along

19   with Mr. Armstead to have an ongoing venture of commercial

20   sex acts that would have O.S. operate under duress, by

21   threat of force, fraud or coercion; that she also -- and

22   thus causing O.S. to engage in a commercial sex act.

23          The evidence of that, notwithstanding that

24   Ms. Baca was a juvenile sex-trafficking victim of Terrell

25   Armstead, that is not something that the Government runs

1      from nor is it something that the Government does not want

2      the Court to consider.  It is in fact something that the

3      Government considered for over -- over time.  However, it

4      doesn't negate Ms. Baca's behavior in this case.

5              In this case, Ms. Baca very clearly was what we

6      know to be in the commercial sex industry as the bottom.

7      She was the lieutenant for Mr. Armstead.  Without her, he

8      would not have been able to traffic O.S.

9              She was the person who was with -- the evidence

10     shows through text messages, through cell phone records,

11     that Ms. Baca was with -- it corroborates O.S.'s account

12     that Ms. Baca was with her at every turn, that she would

13     report back to Mr. Armstead if O.S. got out of pocket, which

14     was the proverbial term for breaking the rules; she --

15             MS. SHANER:  Your Honor --

16             MS. DAVIS:  -- laid those rules out for O.S.

17             MS. SHANER:  -- is the Government testifying?

18     Because I didn't hear any of that.

19             THE COURT:  You'll have your chance.  But you're

20     out of order by standing up from counsel table.

21             MS. SHANER:  Sorry.

22             THE COURT:  You may continue, Ms. Davis.

23             MS. DAVIS:  Thank you, your Honor.

24             And again, I'm referring to the statement of

25     facts, which were included in the witness's testimony,

1  though not read aloud in court.

2         Ms. Baca again was with the Witness 1, O.S., at

3  all times.  She reported back.  If the Defendant was -- if

4  the Defendant Armstead was not available to collect money

5  from O.S., Ms. Baca collected that money on his behalf.

6  These are all indicia of her involvement.

7         Moreover, she laid out the rules for O.S. and told

8  her what those rules are and made sure she followed them.

9  She enforced those rules.  And she did that knowing that

10  Mr. Armstead had access to weapons.

11         As you'll see in the statement of facts, as O.S.

12  was preparing to try and leave the operation, leave Ms. Baca

13  and Mr. Armstead, Mr. Armstead walked around the apartment

14  with two guns.  And Ms. Baca reported to him that there was

15  another pimp outside waiting for O.S. in an attempt to --

16  what O.S. believed to be another attempt to get her in

17  trouble, to get her assaulted, to get her in danger.  And

18  this was right in line with the behavior that Ms. Baca had

19  displayed all along.

20         So that's to the first count.

21         The second count is obstruction.  And this is a

22  special kind of obstruction, because it's 1591(d).  Congress

23  has laid out this obstruction specifically for

24  human-trafficking cases because we have situations like this

25  one that are very complicated.  They do involve a high level

1    of manipulation and cross roles.  People can be both victim

2    and perpetrator.

3              And in this case, Ms. Baca, while Mr. Armstead was

4    incarcerated -- and again, our time of crime here would be

5    March 2019 through May of 2019 -- Ms. Baca made false

6    statements to the police; she moved weapons; she operated

7    on -- she operated as Mr. Armstead's arm, even outside of

8    his incarceration.

9              Without -- as the Government posits in its

10   statement of facts and its -- and in its detention

11   memorandum, she frustrated the investigative steps that were

12   taken to prosecute Mr. Armstead.

13             She attempted to mislead the Government, although

14   we had text messages showing that she had engaged in a

15   commercial sex enterprise with him.  She said that he was

16   not her pimp, that he would only take her to K Street and

17   drop her off, that he didn't know what she was involved in.

18   And she did all of that, she said all of that to law

19   enforcement officials at the point that Mr. Armstead had

20   already been brought in on the gun charges, had been

21   indicted on the gun charges and was facing the trafficking

22   charges in this case.

23             And so I understand defense counsel's point that

24   she may have been operating under duress at certain points

25   in time during the course of this case; and the Government

1    takes that into account.  That's why she's charged with what

2    she's charged with.

3            But all of that behavior was not just -- just at

4    the direct request of Mr. Armstead.  That behavior, though

5    informed by Mr. Armstead for sure -- and the Government's

6    case against Mr. Armstead is still pending -- she still made

7    herself an instrument of his operation and continued to do

8    so even after he was incarcerated.

9            And so that's why we've charged her.  This is not

10   an easy case to charge.

11           However, as the witness said, she was made aware

12   of the charges that would be pending against her at the very

13   beginning, especially the trafficking-in-guns charge that

14   has not been put forth by the Government as of yet.  But

15   it's especially for the conspiracy and obstruction.  She was

16   well aware of those charges.

17           And we've provided extensive discovery in this

18   case, all under the theory of having her be fully informed

19   as to what her conduct was and why she's being charged with

20   that conduct.

21           THE COURT:  Thank you.

22           Ms. Shaner, would you like to be heard on why

23   there is not probable cause supporting these charges?

24           MS. SHANER:  Your Honor, we're only talking about

25   the period of January 2018 to December of '18 for the

1    conspiracy charge.

2             Between January of 2018 and December of 2018, the

3    Government has presented no proof of any agreement, spoken

4    or unspoken, between Ms. Baca and Mr. Armstead.

5             In the -- in opposition, the Government witness

6    stated that at all times, including that time, it was known

7    that Mr. Armstead was armed, violent and dangerous and was

8    threatening at least two people, Ms. Stebbens and Ms. Baca.

9             There is no evidence of any telephone

10   communications between Ms. Baca and Mr. Armstead between

11   January of 2018 and December of 2018.  There is no evidence

12   of any text messages indicating a conspiracy.  There's no

13   written materials.

14            There are certainly allegations, but there's no

15   evidence to sustain a criminal charge of conspiracy.

16            And there is evidence both of duress and coercion,

17   which are defenses to any criminal charge, which requires a

18   *mens rea* and a guilty *mens rea*.  And there's been no proof

19   of that here.

20            As to the second charge, I would concede that

21   Ms. Baca did change what she said to federal officials.  She

22   did not testify at the grand jury [inaudible] perjury, but

23   that she spoke to federal officials in the Office of the

24   United States Attorney and that those conversations were

25   recorded.

1          One defense to that is ineffective assistance of

2     counsel.  I cannot believe that any attorney would allow

3     their client to make contradictory statements without asking

4     for a Fifth Amendment exclusion and asking their client to

5     leave the Office.  She wasn't subpoenaed to the Office; she

6     was only subpoenaed to the grand jury.

7          If there was a violation of 18, United States

8     Code, 1591, it was *de minimis*.  I've been doing this a long

9     time, and I cannot recall any cooperating witness who in the

10    beginning of sitting down with government officials did not

11    equivocate until they trusted people.

12         And this is a child who has been a victim of

13    sexual violence by this man since she was 16, exclusively in

14    his power and control.  And the fact that he was

15    incarcerated does not limit the fact that he was calling her

16    and he had friends on the street.

17         So he was instructing her in telephone calls what

18    she should do.

19         I would argue that she did not have the *mens rea*

20    and that there was duress and coercion.  And even if the

21    Court finds that there was a violation, it was not the kind

22    of violation that requires somebody to be held without bond.

23         This does not -- this is not an obstruction where

24    witnesses were shot or injured or threatened.  She was the

25    witness who was being threatened and coerced.

1          THE COURT:  Did you have anything in rebuttal?

2          MS. DAVIS:  No, your Honor.

3          Oh, there is one thing.

4          One representation that I wanted to correct, which

5    is that Ms. Baca was, in fact, offered and exercised a

6    [inaudible] immunity agreement with the Government, as is

7    included in our statement of facts.

8          However, when she later per -- well, attempted to

9    perjure herself or to tell an untruth that was not in line

10   with the evidence that we had, and we did in fact turn over

11   several text messages and other corroborating evidence that

12   contradicted her later statements, it's only at the point

13   that those -- that her initial statements were contradicted

14   that the Government used those statements in the statement

15   of facts.

16          THE COURT:  Okay.  Thank you.

17          MS. DAVIS:  Thank you.

18          THE COURT:  I will take a recess to review the

19   adopted statement of facts again in connection with the

20   arguments that were made here.  I'm reluctant to tell you

21   how long that will be because I don't always know, but my

22   estimate is 15 to 20 minutes.

23          I will also review the detention memorandum in

24   that time.

25          Thank you.

```
 1          MS. DAVIS:  Thank you, your Honor.

 2          THE COURTROOM DEPUTY:  All rise.

 3          (Pause in the FTR-Gold recording.)

 4          THE COURTROOM DEPUTY:  Your Honor, we are back on

 5     the record.

 6          THE COURT:  Prior to my recess, I heard the

 7     testimony of Detective Jeremiah Johnson of MPD as well as

 8     arguments from the defense and the Government about whether

 9     his testimony, which included a statement of facts, which he

10     adopted, which had been incorporated into the criminal

11     complaint -- but I heard argument on whether that was

12     sufficient to support a finding of probable cause for the

13     two charges in the criminal complaint against Ms. Baca.

14          I found -- I find Mr. Johnson's testimony to be

15     comprehensive and reliable.

16          And based on the record presented in court today,

17     I find that there is probable cause to believe that the two

18     crimes charged in the criminal complaint, which are

19     conspiracy to commit sex trafficking of children by force,

20     fraud or coercion, in violation of 18, United States Code,

21     Section 1594(c); and obstruction, attempt to obstruct,

22     interference with or prevention of enforcement of 18, United

23     States Code, Section 1591, specifically 1591(d), were

24     committed.

25          It bears noting that the defense made arguments
```

1    that, as the Government acknowledged, Ms. Baca may well

2    herself have been a victim of Mr. Armstead.  And the defense

3    made arguments about operating under duress and perhaps

4    lacking the requisite *mens rea* to support these charges.

5            Given the lower bar of probable cause in

6    comparison to the burden of proof that the prosecution will

7    bear at trial, I do not find those arguments prevent a

8    finding of probable cause.  Those are of course arguments

9    that the defense can make at a later stage of this case,

10   given that this -- at this procedural stage, there's a

11   significantly lower standard than the burden of proof that

12   will apply at trial.

13           In addition, notwithstanding my finding of

14   probable cause, Ms. Baca retains the presumption of

15   innocence, which she will have through trial, if she elects

16   to have a trial, and the jury will not be informed of my

17   finding on probable cause.  They will make their own

18   decision.

19           At this point, I will turn to the detention

20   hearing phase of this hearing.

21           Could the Government -- I understand that the

22   Government is seeking pretrial detention, and I have

23   reviewed the memorandum in support of pretrial detention,

24   which appears to include most, if not all, of the facts that

25   were also set forth in the statement of facts that was

1    adopted by Officer Johnson.

2         Ms. Davis, if you could present argument without

3    feeling the need to repeat all of those facts on why you

4    believe Ms. Baca should be held without bond pending trial.

5         MS. DAVIS:  Yes, your Honor.

6         As the Government sets forth in its detention

7    memorandum, the crimes that Ms. Baca is charged with and the

8    Court has now found probable cause give rise to a rebuttable

9    presumption under 13 -- under 18, USC, 3142(f)(1)(A).

10        That rebuttable presumption is not overcome by any

11   of the factors that are laid out which the Government laid

12   out in its detention memorandum.

13        But I will specifically point to the fact that the

14   Government has now through the agents reached out to

15   Montgomery County about the case on which she was on

16   probation; and what we were informed of is that she never

17   reported to the officials there and that she never

18   participated in the programs that they had set out for her

19   to participate in that were specifically designed for

20   victims of sex trafficking or people who had been involved

21   in prostitution.

22        So to the extent that the Government anticipates

23   there will be arguments made about her going into some type

24   of program, those are offers that have already been made to

25   her.  And she did not avail herself of them, which caused

1    them to actually move on her -- to invoke a show-cause

2    hearing for her even before the Government had presented to

3    Judge Harvey the arrest warrant.

4            It just so happens that on the same day that we

5    went to look for her, she had already been detained by

6    Montgomery County after having violated their probation for

7    her.

8            So that's all I'll add to the point I made in the

9    detention memorandum.

10           THE COURT:  I have a question -- so are you

11   arguing that Ms. Baca is both dangerous and a risk of flight

12   or only -- or only one or the other?

13           MS. DAVIS:  I'm arguing that she's dangerous and

14   I'm also arguing -- and that's laid forth in the detention

15   memorandum.  But I'm also arguing that if the Court were to

16   entertain conditions of release that would ensure her

17   compliance with the Court that this noncompliance in

18   Montgomery County speaks to that point.

19           THE COURT:  So you don't believe that she's a

20   flight risk?

21           MS. DAVIS:  I think that she -- her obstruction

22   and her lack of compliance in Montgomery County speak to her

23   being a person who would leave the jurisdiction.

24           But in dealing with her through these months, I

25   certainly cannot make any representations that she hasn't

1     shown up.  She shows up when she's been brought forth for

2     the grand jury.  I won't say that she won't do that.  It's

3     just that she won't comply with the Court's conditions.

4              And so if the Court were to try to set conditions,

5     for instance, to protect the community, to keep her from

6     dealing with guns or to keep her from dealing in this type

7     of conduct, I don't believe that Ms. Baca would follow those

8     conditions and thus would continue to be a danger, which is

9     what's presumed under these statutes, both 1591(d) and the

10    1591 human trafficking by force, fraud or coercion.

11             THE COURT:  And specifically regarding danger,

12    what dangerous conduct do you contend that Ms. Baca has

13    engaged in since Mr. Armstead's incarceration?  And let me

14    back up.

15             Is Mr. Armstead still incarcerated?

16             MS. DAVIS:  Yes, he is.

17             THE COURT:  Okay.

18             MS. DAVIS:  Yes, he is.

19             Aside from the movement of guns, which is

20    something we know she did while he was incarcerated, and

21    it's our belief that she has put herself in the same

22    environments that she was in when she was working -- she and

23    O.S. were working, the environment where she was gathering

24    commercial sex customers, the strip club that she was

25    working at, which is how they were gathering customers after

1    Backpage went down.  She was -- she's continued to have that

2    employment.  In fact, that's where the agents went looking

3    for her when they were attempting to arrest her.

4            I think the rebuttable presumption for

5    dangerousness under this statute is not restricted to

6    persons who sort of always walk around with a gun or always

7    have engaged in behavior that is assaultive; it's that this

8    level of manipulation, this level of aiding in a commercial

9    sex enterprise is what causes the dangerousness.

10           And I don't think that her behavior under her

11   Montgomery County case will -- shows your Honor that she's

12   going to comply with you and not engage in that behavior.

13   And that's the behavior that brought us here today.

14           THE COURT:  So do you proffer that Ms. Baca is

15   continuing to engage in sex trafficking or -- I don't

16   mean -- putting the weapons aside, is she -- do you contend

17   that she's continuing to engage in sex trafficking either

18   herself or of -- pushing other people to do it while

19   Mr. Armstead is incarcerated?

20           MS. DAVIS:  I am not proffering that I have

21   evidence of her engaging in that behavior or of her causing

22   others to engage in that behavior.

23           But I am proffering that the means by which she

24   engaged in commercial sex trafficking before, i.e. meeting

25   dates at those clubs and going forward with dates from those

1    clubs, commercial sex dates from those clubs, that those

2    clubs are still the same places where she is now.

3              And -- the Court's indulgence.

4              I just wanted to make sure that I wasn't

5    misquoting the evidence that we have right now at this time.

6    But that's where the Government's concern lies, is that she

7    hasn't complied in a place that put conditions on her to

8    help her not be engaged in that activity and instead she is

9    at the place where she found and recruited people to be a

10   part of her commercial sex acts as this case was going on.

11             And so that's the Government's concern.

12             THE COURT:  So if she is still going to these

13   clubs while Mr. Armstead is in jail, how is that endangering

14   other people?

15             MS. DAVIS:  If she's --

16             THE COURT:  Who is in danger?

17             MS. DAVIS:  If she is still at these clubs, if she

18   is still engaged in commercial sex acts, which is -- again,

19   I cannot proffer evidence that I have evidence that she's

20   gotten these dates or anything like that.  But if she's

21   engaged in that behavior and she continues to do that, then

22   that's the larger crime.  That's the commercial sex trade

23   that we are all fighting to -- one, it's illegal behavior.

24   Putting that aside --

25             THE COURT:  Right.  So what I have to look at is:

1    What is the danger to the community?  I have to find that

2    she's so dangerous that she has to be incarcerated, given

3    that you're not arguing that her lack of compliance

4    indicates that she's a risk of non-appearance in court.

5             And so that's why I'm focused on -- and if

6    Mr. Armstead were out and, you know, acting as a pimp and

7    there were other Witness 1s out there who are being forced

8    to engage in dangerous conduct themselves, that would be one

9    thing.

10            But it seems like what we're describing is a

11   situation where the pimp is in jail; there's no evidence

12   that there are other prostitutes who Ms. Baca is currently

13   serving as the lead prostitute for.  She may be doing things

14   that are illegal while she is at these nightclubs, but that

15   doesn't directly show that she is dangerous.  There is a

16   presumption, but the defense has already given me a whole

17   thing about she's a victim.

18            I -- not to put words in Ms. Shaner's mouth, but I

19   assume that when she gets up here to make her argument,

20   she's going to say Ms. Baca is a victim.  That overcomes the

21   presumption of detention here.

22            So I'm trying to get from you a sense of what the

23   danger that she presents that requires the Court to take the

24   extreme act of having her incarcerated when she is still

25   presumed innocent.

1         MS. DAVIS:  So, your Honor, I'd start back at the

2     presumption, the rebuttable presumption that's set forth for

3     these types of crimes.

4         And I hear your Honor's point.  The Government is

5     not positing -- is not proffering evidence that she has

6     recruited new people or that she has engaged those new

7     people.

8         But the Government's concern is that if she puts

9     herself -- has -- now that she's put herself back in those

10    same environments and there's no condition that you can set

11    that won't put her back in those environments, then the same

12    way in which she was recruiting, the same way in which she

13    was monitoring someone for Mr. Armstead at that time, she

14    could do the same thing now, because she's in those same --

15    she's running in that same circle and she's in that same

16    environment.

17        And I don't think the Court's finding has to be

18    that she's running around with live ammunition or -- that's

19    not the dangerousness test when there is a rebuttable

20    presumption for this type of crime that Congress has set

21    forth.

22        The other argument I'll make -- and this does go

23    to flight -- is, part of what brings the rebuttable

24    presumption in these cases is the penalty that one is facing

25    when they look at these types of crimes.

1          And as I said before, she has appeared before.

2     However, now, there is a criminal complaint that charges her

3     and a Court has found by probable cause that she has engaged

4     in the type of conduct that presents very high sentencing

5     exposure.

6          And we would argue that that is one of the reasons

7     why this crime is set out when in 13 -- in 3142(f)(1)(A), it

8     says a crime of violence or violations under 1591, because

9     the penalties are so high in these types of cases that one's

10    positioning in terms of wanting to flee changes when they're

11    charged with this type of crime.

12              THE COURT:  Okay.  Thank you.

13              MS. DAVIS:  Thank you, your Honor.

14              THE COURT:  Ms. Shaner?

15              MS. SHANER:  First of all, as to the case in

16    Montgomery County, there were no failures to appear.

17          I spoke to Agent Love at 1:00 p.m. today, and she

18    said there has been no revocation, that Ms. Baca was on

19    unsupervised release and the only condition was that she

20    complete a treatment plan for victims of sex trafficking and

21    that she hadn't received any documents to date.

22          Ms. Love said they would postpone -- asked me to

23    call her and tell her whether Ms. Baca was released today,

24    and they would postpone any action until this case was

25    terminated, which indicates to me that no action has been

1    taken.

2              There's no risk of flight.  There's the opposite.

3    Ms. Baca has been trafficked around the United States, has

4    called her parents, crying, trying to get back home and has

5    been in terrible risk herself.

6              Her mother, Jessica Coach, is in court today.  She

7    took off from her job and had to do incredible things to get

8    here today.  Her sister's in court.  Her niece is in court.

9              They have contacted Pretrial Services to indicate

10   that she can live with them at their home in Calvert County.

11   She verified her address.  They came to court today to be

12   interviewed by Mr. Coles of Pretrial Services to find out

13   what high-intensity supervised release entails.  They are

14   now informed and they're willing to have her -- their

15   daughter at home under HISP.

16             They have researched along with me for placements

17   locally for help.  Calvert County Health Department, close

18   to their home, has both drug traffic -- I'm sorry -- drug

19   programs, mental health programs and mental health

20   specifically designed to help victims of human trafficking.

21             Ms. Baca was a victim of child sex abuse before

22   she ever came into contact with Armstead.  She was brutally

23   abused as a little girl.  Her mother has worked to try to

24   keep her safe.  After the individual who brutally abused her

25   for three years was released from prison, she took off.  And

1　　　that's when she became involved with Mr. Armstead, when she

2　　　was a brutalized, terribly disturbed little girl.

3　　　　　　She's being held at CTF based on the severity of

4　　　this offense on 24-hour-a-day lockdown.  She's transported

5　　　in shackles and handcuffs to see counsel.  And all her

6　　　movements are in shackles and handcuffs.  She's released for

7　　　one hour on Monday and one hour on Friday to take a shower.

8　　　She's getting no mental health treatment, even though the

9　　　jail was notified that she has posttraumatic stress disorder

10　　and anxiety.

11　　　　　　I believe that, based on the factors of 3142, the

12　　nature and circumstances of this offense, it is not a crime

13　　of violence, though.  If the Court has found there's

14　　probable cause that it may be a violation of Section 1591,

15　　it is not a terrorism attack, firearms or explosives.  I

16　　don't know why Congress designated 1591 when it does not

17　　involve children.  But there's no exclusion here.  So I

18　　acknowledge that as one factor.

19　　　　　　The weight of the evidence against the person:

20　　The Court heard a little bit about the evidence against

21　　Ms. Baca.  It's not an overwhelming Government case.

22　　　　　　This is a 21-year-old girl with one misdemeanor

23　　conviction.  She has physical and mental problems.  All her

24　　family ties are in the area.  Her family will financially

25　　support her.  She will not be going to clubs.  If she is on

1    HISP, she can be ordered also to have home detention except

2    for treatment or drug abuse or sex trafficking and for her

3    mental health.

4          While at the time of her current offense she is on

5    probation, it is unsupervised probation for a misdemeanor.

6    There is no risk of flight.  She is not a danger to any

7    person or the community except herself.

8          I would ask that the Court release her into HISP

9    and that the release order include regulations that require

10   her to stay out of DC, have no contact with Mr. Armstead,

11   accept no phone calls from him.

12         I would note for the Court that she is still in

13   danger, as is her family.  They have been receiving

14   telephone calls from Mr. Armstead, from his mother, from his

15   sister and from criminals associated with guns and violence.

16   If she were able to leave this jurisdiction, she and her

17   family, they would.  They are all scared.

18         And I respectfully request that the Court find

19   that there are conditions of release that would ensure her

20   return to court and that she is not a threat to any other

21   individual.

22         Ms. Coach is in the courtroom, if the Court wants

23   to inquire.  I know she's already spoken to Pretrial

24   Services, as has her sister.

25         THE COURT:  So out of the arguments you've made,

1    what do you --

2              MS. SHANER:  I'm sorry?

3              THE COURT:  Out of the arguments that you've made,

4    what do you contend rebuts the presumption of detention?

5              MS. SHANER:  That she would be on home detention

6    and her geography would be known.  And if she left the house

7    for anything other than treatment or to meet with her lawyer

8    or to come to court, she would be in violation.  And the

9    Court would immediately have the right to a hearing.

10             I don't know that a hearing would -- for that kind

11   of a violation without any proof that there had been any

12   violence towards anyone -- but I guess there could be a

13   ruling that she not have a gun.

14             I know the family has said there are no firearms

15   in the house.  And that -- I would ask that could be a

16   condition of release as well, that there be no firearms in

17   the house, although I don't think that's a real concern.

18             THE COURT:  Okay.  Thank you.

19             Does the Government have any rebuttal arguments?

20             MS. DAVIS:  Yes, your Honor.

21             Your Honor, the point that the Government is

22   making about Ms. Baca being able to follow the court orders

23   is that whatever conditions the Court sets, the danger is

24   that you don't know what she will do.  And we know that

25   while Mr. Armstead was in, which is where he is now, that

1    she was obstructing justice.

2            We know that when he was in, she was move -- where

3    he is now, she was moving guns on his behalf.

4            Her acting on his behalf is still her doing his

5    bidding.  And when she's doing his bidding, it's dangerous

6    behavior.

7            Moreover, the programs that Ms. Shaner points to,

8    the family support that she's talking about, all of those

9    things were in place and available to Ms. Baca before she

10   became a subject of prosecution in this case.  All of that

11   was available to her.  All of it was offered to her, not

12   only in Montgomery County, but also here in the District of

13   Columbia.

14           And she did not follow the Court's orders out

15   there, and it's our belief that she won't follow your orders

16   to be a part of any of those programs, because she has made

17   up her mind what she plans to do.  Even under threat of

18   prosecutions, she still obstructed justice.  She still moved

19   guns.  And the Court cannot be assured that she won't

20   continue in that behavior when -- if and when the Court sets

21   conditions for her.

22           THE COURT:  And Ms. Shaner seems to be disputing

23   what the status is of the Maryland case.  Do you -- could

24   you respond to that?

25           MS. DAVIS:  I think her argument is that they

1    hadn't made a final decision yet.

2            However, our argument was that she wasn't

3    complying with their conditions, which is why she pulled her

4    in on the show-cause order.

5            That -- just because they're sort of waiting for

6    your decision to decide what to do next or waiting for the

7    resolution of this case to decide to do -- to decide what to

8    do next does not mean that they were not displeased with her

9    compliance with their probation.  She was not compliant.

10   That was very clear.

11           THE COURT:  And is she being held?  I thought

12   Mr. Johnson said something about --

13           MS. DAVIS:  They released her to us.

14           THE COURT:  Okay.

15           MS. DAVIS:  The Court's indulgence.

16           The last thing I'll say is that Ms. Shaner --

17   although Ms. Shaner has made comments about counsel that

18   Ms. Baca had before, her -- her counsel that she had before

19   was retained.  She chose her counsel, and her counsel was

20   very diligent in its effort -- in his efforts.

21           And under the advice of counsel, Ms. Baca still

22   obstructed justice and she still did not comply with what

23   Montgomery County had set forth as her conditions.  And she

24   had counsel.

25           She still -- so if Ms. Shaner's argument is that

1    now that she has her as an attorney, she's going to -- she's

2    going to comply, I don't think the Court can rely on that,

3    because she had counsel before.

4              MS. SHANER:  Your Honor, very briefly:

5              As the Court takes a look at the Pretrial

6    Services --

7              THE COURTROOM DEPUTY:  [Inaudible].

8              MS. SHANER:  I'm sorry.  Height.

9              As the Court takes a look at the Pretrial Services

10   report, there are no bench warrants or escapes for this

11   Defendant, which mitigates against any arguments as to risk.

12             And on Page 1, the basis for recommendation,

13   dangerousness, violence, rearrest risk, based on the

14   algorithm that Pretrial Services uses, they found low for

15   this Defendant on Page 1.

16             THE COURT:  Okay.  Thank you.

17             MS. DAVIS:  The Court's indulgence.  I just was

18   handed rebuttal for those points.

19             It looks like there was a bench warrant issued on

20   12-3-18.  And then she appeared on 12-13-18.

21             And then another bench warrant was issued on

22   August 14, 2019, and then she returned on -- and that bench

23   warrant was -- she was actually brought in on August 16th,

24   2019.

25             She does have a hearing for violation of Pretrial

1    Services conditions.  And that hearing is set for September

2    5th, 2019, at 9:30 in Maryland.

3              And the last point I'll make is that if the Court

4    were considering home confinement, it can only monitor

5    movements.  It can't monitor if she gets on that phone and

6    it can't monitor any of her electronic devices in terms of

7    text messages she may send or anything of that nature.

8              The Court's indulgence.

9              Also, your Honor, I'll just note that Pretrial

10   has -- in their recommendations, they have said to this

11   Court that there are no combination of conditions that would

12   rebut the presumption here in this case.  And if you want --

13   if you would like, you could hear from Pretrial at this time

14   with recommendations that they would make.

15             THE COURT:  Thank you.

16             Ms. Schuck, I have a couple of questions for you

17   about the pretrial report.

18             THE PRETRIAL SERVICES OFFICER:  Christine Schuck,

19   Pretrial Services.

20             THE COURT:  Thank you.

21             So in the pretrial report, which was from August

22   19th, which I believe was Ms. Baca's initial appearance

23   date, it states under residency, "Corroborated:  No."

24             But Ms. Shaner today suggested that there might

25   have been some conversations with Pretrial --

1          THE PRETRIAL SERVICES OFFICER:  Yes.

2          THE COURT:  -- today.

3          So is there -- excuse me.  Is there an address

4     that has been verified by pretrial?

5          THE PRETRIAL SERVICES OFFICER:  Yes, your Honor.

6     At the time this report was done, the case was sealed; so

7     therefore, when a case is sealed, Pretrial cannot reach out

8     to verify the information prior to the hearing.

9          Once the case becomes unsealed, then Pretrial

10    Services can verify.

11         But Pretrial Services at the request of Ms. Shaner

12    has also screened Ms. Baca for the high-intensity

13    supervision program.

14         Our recommendation still stands, as there are no

15    combination of conditions that is going to ensure the safety

16    of the community.  So that is still Pretrial's

17    recommendation.  Our recommendation has not changed.

18         Pretrial at the request of Ms. Shaner did screen

19    Ms. Baca for the high-intensity supervision program.  There

20    is an address that Ms. Baca can reside at if your Honor

21    places Ms. Baca into the high-intensity supervision program.

22         THE COURT:  And is that the address that's in the

23    pretrial report in Maryland?

24         THE PRETRIAL SERVICES OFFICER:  Yes, your Honor.

25         THE COURT:  Okay.  Thank you -- oh, I'm sorry.

1    One other thing.

2           Do you have any additional information about the

3    status of the proceedings in Maryland that either differs

4    from or elaborates on what we've heard from Ms. Davis?

5           THE PRETRIAL SERVICES OFFICER:  The only

6    difference is, I can only go by what's in the court record

7    from Maryland.  According to the court record in Maryland,

8    it is actually supervised probation, not unsupervised.

9    Again, I'm looking only at the court record.

10          There are actually two hearings that are set for

11   September 5th.  One is a violation of probation and the

12   second one is a violation of the Pretrial Services unit,

13   which the case status is showing reopened.  So I'm not sure

14   exactly why Pretrial is also involved.  But appearing

15   from -- reviewing the court record, it appears that Pretrial

16   is also involved now and Probation, and there are two

17   separate violation hearings set for September 5th.

18          In reviewing the Court record, there were two

19   bench warrants that were actually issued.  On December 3rd,

20   there was a bench warrant issued for Ms. Baca.  And she

21   appeared in court ten days later on December 13th.  And then

22   most recently, in August, on August 14th, there was a bench

23   warrant issued for her.  And then she was returned on the

24   bench warrant on August 16th, which does show some risk of

25   flight.

1           And I will note that even in the high-intensity

2     supervision program, Pretrial will not be able to monitor

3     any type of electronic monitoring devices.  The only thing

4     the GPS bracelet will do is monitor the movements, so if she

5     leaves the home.  What she does in that home, who she's on

6     the phone with, who she's on the computer with, Pretrial

7     Services is going to have no control.  We cannot monitor

8     that and we cannot protect the community if anything's

9     happening using electronic devices.

10          THE COURT:  Okay.  Thank you, Ms. Schuck.

11          THE PRETRIAL SERVICES OFFICER:  Thank you.

12          THE COURT:  The Court will take another recess.  I

13    will announce my decision on the detention request when I

14    return, which I estimate will be by 4:50 at the latest.

15          Please stay close, as I'm hoping to come out

16    sooner than that.

17          Thank you.

18          THE COURTROOM DEPUTY:  All rise.

19          (Pause in the FTR-Gold audio recording.)

20          THE COURT:  Ms. Davis, I just have one followup --

21    oh, sorry.

22          THE COURTROOM DEPUTY:  We're back on the record.

23          THE COURT:  Thank you.

24          Ms. Davis, I just have one followup question for

25    you.

```
1              MS. DAVIS:  Yes, your Honor.

2              THE COURT:  Does the Government contend that

3     Mr. Armstead is continuing to engage in unlawful activity

4     while he is incarcerated?

5              MS. DAVIS:  Yes, your Honor.

6              THE COURT:  Okay.  Thank you.

7              MS. DAVIS:  Meaning we think he's still engaged in

8     obstruction during the time that he's incarcerated.

9              THE COURT:  Okay.  Thank you.

10             I have considered the evidence, arguments and

11    proffers as well as the testimony from Detective Johnson

12    that was offered as part of the preliminary hearing in order

13    to evaluate the Government's request that Ms. Baca be held

14    without bond pending trial.

15             I have evaluated that under the legal standards

16    set forth in the Bail Reform Act in order to determine

17    whether there are any conditions of release that the Court

18    could impose that would reasonably assure the appearance of

19    the Defendant and the safety of the community.

20             The Government has to prove by clear and

21    convincing evidence that there are no conditions that would

22    adequately ensure the safety of the community.  And to the

23    extent the Government's arguments are based on risk of

24    non-appearance, the Government's burden is a preponderance

25    of the evidence.
```

 1          In addition, given my probable cause finding,

 2     there is a presumption of detention that applies to this

 3     case under the Bail Reform Act.

 4          The four factors that I have to consider are the

 5     nature and circumstances of the charged offense, the weight

 6     of the evidence against the Defendant, the Defendant's

 7     history and characters and the nature and seriousness of any

 8     of danger to the community that would be presented by

 9     release.

10          The first factor, the nature and circumstances of

11     the charged offense, weighs in favor of pretrial detention,

12     given that the Defendant is charged with sex trafficking as

13     well as obstruction and given that she faces a high exposure

14     of sentence.  And these are charges that, when there's

15     probable cause, as I have found there is here, trigger a

16     presumption of detention.  All of those lead this first

17     factor to weigh in favor of pretrial detention.

18          The second factor, the weight of the evidence

19     against the Defendant, also weighs in favor of pretrial

20     detention.

21          The Government has proffered strong evidence

22     against Ms. Baca on the sex-trafficking charge, which is set

23     forth in the statement of facts which was adopted by

24     Detective Johnson.  They have stronger evidence on the

25     obstruction charge, which was corroborated by recorded

1    conversations, and the nature of the conflicting testimony

2    that Ms. Baca allegedly gave when being interviewed by

3    Government officials.

4         The defense has alleged that Ms. Baca was herself

5    a victim, which the Government has acknowledged, and the

6    defense has pointed to duress and coercion and argued that

7    that raises serious questions about the voluntariness of any

8    conduct that Ms. Baca engaged in.

9         The Government in response notes that there are

10   independent or -- "independent" may not be the right word,

11   but that Ms. Baca herself took actions when she was not

12   physically in the presence of Mr. Armstead and that those

13   actions, as set forth in the statement of facts adopted by

14   Detective Johnson, show that she had the requisite state of

15   mind to support the charges.

16        I can't say that the evidence weighs very strongly

17   in favor of detention on the sex-trafficking charge, given

18   the defense's arguments about voluntariness.  Nonetheless,

19   this factor -- still, the evidence is strong enough despite

20   the possibility of such a defense -- this evidence is strong

21   enough to tilt this factor in favor of detention.

22        The third factor is the history and

23   characteristics of the Defendant as another thing that I

24   have to consider.  There are positive and negative aspects

25   of Ms. Baca's history and characteristics.

1          On the positive, she has the support of her

2     family, who are present in the courtroom, who have offered

3     that she reside with them.  And in addition, the defense has

4     asserted that Ms. Baca was herself a victim of traumatic

5     abuse and suggests that that may -- should be taken into

6     consideration when evaluating the charges and whether she

7     should be released.

8          The Government counters that Ms. Baca has a

9     history of noncompliance with release conditions, as

10    demonstrated by the pending show-cause hearing -- potential

11    hearings regarding potential revocation of her release in

12    connection with matters pending in Maryland.  And they

13    assert that Ms. Baca failed to participate in programs that

14    were offered, such as mental health or programs geared

15    toward victims of sex trafficking.

16         The fourth factor that I have to consider is the

17    nature and seriousness of the danger to the community if

18    Ms. Baca were released.

19         The Government proffers that Ms. Baca presents a

20    danger to the community because if she were released she

21    would continue to assist Mr. Armstead in his illegal

22    activities which, given that he is incarcerated currently,

23    would consist of obstruction -- obstruction activities.

24         I have to consider whether the rebuttable

25    presumption has been rebutted.  The defense argued that that

1    presumption can be rebutted by home confinement as a

2    condition of release.  And I have given that serious

3    consideration.

4         I would note that the Government -- and this

5    probably goes to history and characteristics -- the

6    Government had indicated that Ms. Baca was continuing

7    despite being on release in the other matter -- was

8    continuing to go to the same nightclubs where the alleged

9    prostitution activity occurred.  I believe that home

10   confinement, if it were complied with, would eliminate the

11   possibility of doing that.

12        However, there's also a danger that's been

13   identified of communicating with Mr. Armstead and

14   facilitating his sex-trafficking business and

15   obstruction-of-justice type of activities that would

16   undermine the prosecution of Mr. Armstead for such

17   activities, and thereby endanger the community by allowing

18   such activities, which victimize many members of the

19   community, to continue if he is not stopped.

20        I conclude -- in addition, although I don't have

21   in my notes that the defense has expressly identified

22   Ms. Baca's history and characteristics, including the fact

23   that she was an alleged victim of Mr. Armstead as rebutting

24   the presumption, but I did consider that as well in

25   evaluating whether the presumption has been rebutted in this

1    case.

2           Ultimately, I conclude that the fourth factor

3    weighs in favor of pretrial detention as well.

4           In addition, I conclude that when I weigh all of

5    the factors, the Government has convinced me by clear and

6    convincing evidence that even conditions as stringent as

7    home confinement would not ensure the safety of the

8    community if Ms. Baca were to be released.

9           This was a difficult decision, because there are

10   arguments that cut in both directions in this case,

11   particularly given the suggestion that Ms. Baca was

12   essentially herself manipulated and threatened and coerced

13   into activity by Mr. Armstead.

14          However, given the history of noncompliance with

15   release conditions, which would have included a no-contact

16   with Mr. Armstead, given that it would not be possible to

17   monitor or prevent Ms. Baca from communicating with

18   Mr. Armstead, even if I were to confine her to her home, I

19   conclude that there is a substantial danger that, even if

20   released under restrictive conditions of home confinement,

21   Ms. Baca would continue to assist Mr. Armstead in engaging

22   in illegal conduct and that the Court cannot trust release

23   conditions to adequately protect the community against that.

24          As a result, as I will set forth in a written

25   decision as required by the statute, I will order that

1   Ms. Baca be held without bond pending trial.  This ruling is

2   without prejudice to the defense's ability to seek further

3   review and appeal of my ruling and to attempt to persuade

4   either the Chief Judge, if this case doesn't get assigned

5   to -- if it's not indicted soon or the District Judge if

6   there's an indictment or otherwise gets assigned that she

7   should be released.

8          But my conclusion is that Ms. Baca should be held

9   without bond pending trial.

10         Before I wrap this up, did the Government or the

11  defense have anything else for the Court?

12         MS. DAVIS:  No, your Honor.

13         THE COURT:  Ms. Baca will be remanded into the

14  custody of the marshals to be held without bond pending

15  trial.

16         I thank the family for coming and staying in court

17  this afternoon.

18         Counsel and Pretrial, you are excused.

19         That concludes this matter.

20         (Proceedings concluded.)

21

22

23

24

25

## __CERTIFICATE__

I, LISA EDWARDS, RDR, CRR, do hereby

certify that the foregoing constitutes a true and accurate

transcript of my stenographic notes, and is a full, true,

and complete transcript of the proceedings produced to the

best of my ability.


Dated this 16th day of September, 2019.


/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, NW, Room 6706
Washington, DC 20001
(202) 354-3269

'

'16 [1] - 10:4
'18 [2] - 15:16, 23:25

/

/s [1] - 55:12

1

1 [5] - 12:18, 17:24, 21:2, 43:12, 43:15
12-13-18 [1] - 43:20
12-3-18 [1] - 43:20
13 [2] - 29:9, 36:7
13th [1] - 46:21
14 [1] - 43:22
14th [1] - 46:22
15 [1] - 26:22
1591 [7] - 15:19, 25:8, 27:23, 31:10, 36:8, 38:14, 38:16
1591(d [2] - 27:23, 31:9
1591(d) [1] - 21:22
1594(c [1] - 27:21
15th [1] - 6:18
16 [2] - 13:24, 25:13
16th [3] - 43:23, 46:24, 55:10
17 [1] - 2:6
1702 [1] - 1:19
18 [6] - 8:14, 15:19, 25:7, 27:20, 27:22, 29:9
19-MJ-00215 [1] - 1:3
19th [1] - 44:22
1:00 [1] - 36:7
1s [1] - 34:7

2

20 [1] - 26:22
20001 [2] - 1:24, 55:14
20009 [1] - 1:19
2015 [2] - 8:21, 9:25
2016 [5] - 8:21, 9:25, 10:11, 10:16, 10:18
2018 [19] - 5:11, 9:4, 9:5, 10:23, 12:3, 13:13, 15:14, 15:15, 17:18, 17:20, 18:15, 19:2, 19:18, 23:25, 24:2, 24:11
2019 [12] - 1:6, 6:18,

8:12, 18:18, 19:1, 19:2, 22:5, 43:22, 43:24, 44:2, 55:10
2019-215-M [1] - 3:2
202 [2] - 1:25, 55:15
20530 [1] - 1:17
21-year-old [1] - 38:22
24-hour-a-day [1] - 38:4
2:34 [1] - 1:7

3

3 [1] - 1:6
3142 [1] - 38:11
3142(f)(1)(A [1] - 36:7
3142(f)(1)(A) [1] - 29:9
31st [2] - 19:1, 19:2
333 [2] - 1:23, 55:14
354-3269 [2] - 1:25, 55:15
3rd [1] - 46:19

4

4 [1] - 2:6
4:50 [1] - 47:14

5

555 [1] - 1:16
5th [3] - 44:2, 46:11, 46:17

6

6706 [2] - 1:24, 55:14

8

8 [1] - 2:6

9

9:30 [1] - 44:2

A

ability [2] - 54:2, 55:7
able [5] - 11:4, 20:8, 39:16, 40:22, 47:2

abuse [3] - 37:21, 39:2, 51:5
abused [2] - 37:23, 37:24
accept [1] - 39:11
access [1] - 21:10
according [1] - 46:7
account [2] - 20:11, 23:1
accurate [1] - 55:4
achieved [1] - 10:6
acknowledge [1] - 38:18
acknowledged [2] - 28:1, 50:5
Act [2] - 48:16, 49:3
act [2] - 19:22, 34:24
acting [2] - 34:6, 41:4
Action [1] - 1:3
action [3] - 15:4, 36:24, 36:25
actions [3] - 15:17, 50:11, 50:13
activities [5] - 51:22, 51:23, 52:15, 52:17, 52:18
activity [5] - 14:15, 33:8, 48:3, 52:9, 53:13
acts [4] - 8:10, 19:20, 33:10, 33:18
add [1] - 30:8
addition [5] - 28:13, 49:1, 51:3, 52:20, 53:4
additional [1] - 46:2
address [5] - 37:11, 45:3, 45:20, 45:22
adequately [2] - 48:22, 53:23
admitted [2] - 15:20, 15:21
adopt [3] - 6:8, 6:12, 6:24
adopted [5] - 26:19, 27:10, 29:1, 49:23, 50:13
advice [1] - 42:21
affidavit [1] - 15:2
afternoon [1] - 54:17
age [2] - 8:14, 10:6
agent [1] - 12:25
Agent [1] - 36:17
agents [3] - 7:15, 29:14, 30:2
agreement [2] - 24:3, 26:6
aiding [1] - 32:8
algorithm [1] - 43:14

allegations [1] - 24:14
alleged [4] - 9:13, 50:4, 52:8, 52:23
allegedly [1] - 50:2
allow [1] - 25:2
allowing [2] - 52:17
aloud [1] - 21:1
Amendment [1] - 25:4
America [1] - 3:2
AMERICA [1] - 1:3
ammunition [1] - 35:18
announce [1] - 47:13
answered [1] - 16:2
anticipates [1] - 29:22
anxiety [1] - 38:10
anytime [1] - 18:6
apartment [1] - 21:13
appeal [1] - 54:3
appear [1] - 36:16
appearance [4] - 34:4, 44:22, 48:18, 48:24
aPPEARANCES [1] - 1:13
appeared [3] - 36:1, 43:20, 46:21
appearing [1] - 46:14
applies [1] - 49:2
apply [1] - 28:12
approach [1] - 12:16
area [1] - 38:24
argue [2] - 25:19, 36:6
argued [2] - 50:6, 51:25
arguing [5] - 30:11, 30:13, 30:14, 30:15, 34:3
argument [7] - 27:11, 29:2, 34:19, 35:22, 41:25, 42:2, 42:25
argumentative [1] - 14:8
arguments [15] - 26:20, 27:8, 27:25, 28:3, 28:7, 28:8, 29:23, 39:25, 40:3, 40:19, 43:11, 48:10, 48:23, 50:18, 53:10
arm [1] - 22:7
armed [2] - 9:5, 24:7
Armstead [61] - 5:3, 8:10, 8:13, 9:5, 9:14, 9:19, 9:23, 10:2, 10:9,

10:17, 11:3, 13:21, 14:4, 14:7, 15:18, 16:18, 17:5, 17:17, 17:21, 18:8, 18:10, 18:13, 19:3, 19:19, 19:25, 20:7, 20:13, 21:4, 21:10, 21:13, 22:3, 22:12, 22:19, 23:4, 23:5, 23:6, 24:4, 24:7, 24:10, 28:2, 31:15, 32:19, 33:13, 34:6, 35:13, 37:22, 38:1, 39:10, 39:14, 40:25, 48:3, 50:12, 51:21, 52:13, 52:16, 52:23, 53:13, 53:16, 53:18, 53:21
Armstead's [2] - 22:7, 31:13
Armstrong [1] - 10:13
arrest [3] - 15:1, 30:3, 32:3
arrested [2] - 7:23, 10:19
article [1] - 5:17
aside [3] - 31:19, 32:16, 33:24
aspects [1] - 50:24
assaulted [1] - 21:17
assaultive [1] - 32:7
assert [1] - 51:13
asserted [1] - 51:4
assigned [2] - 54:4, 54:6
assist [2] - 51:21, 53:21
assistance [1] - 25:1
associated [1] - 39:15
assume [1] - 34:19
assure [1] - 48:18
assured [1] - 41:19
ATF's [1] - 17:17
attack [1] - 38:15
attempt [5] - 18:11, 21:15, 21:16, 27:21, 54:3
attempted [2] - 22:13, 26:8
attempting [1] - 32:3
attention [1] - 5:2
Attorney [1] - 24:24
attorney [2] - 25:2, 43:1
ATTORNEY'S [1] - 1:15
audio [4] - 13:14, 13:16, 13:19, 47:19
AUDIO [1] - 1:11

audio-recorded [1] - 13:16
audio-video [1] - 13:14
August [13] - 6:18, 8:21, 9:25, 10:4, 10:11, 10:16, 14:21, 43:22, 43:23, 44:21, 46:22, 46:24
avail [1] - 29:25
available [3] - 21:4, 41:9, 41:11
Avenue [2] - 1:23, 55:14
aware [2] - 23:11, 23:16

**B**

BACA [1] - 1:6
Baca [92] - 3:2, 5:3, 5:13, 6:1, 7:14, 8:16, 8:17, 8:19, 8:23, 9:13, 9:20, 9:23, 10:1, 10:5, 11:4, 11:16, 14:1, 14:6, 14:10, 15:4, 15:17, 16:6, 16:15, 17:4, 17:22, 18:2, 18:7, 18:10, 18:11, 18:16, 19:14, 19:17, 19:24, 20:5, 20:11, 20:12, 21:2, 21:5, 21:12, 21:14, 21:18, 22:3, 22:5, 24:4, 24:8, 24:10, 24:21, 26:5, 27:13, 28:1, 28:14, 29:4, 29:7, 30:11, 31:7, 31:12, 32:14, 34:12, 34:20, 36:18, 36:23, 37:3, 37:21, 38:21, 40:22, 41:9, 42:18, 42:21, 45:12, 45:19, 45:20, 45:21, 46:20, 48:13, 49:22, 50:2, 50:4, 50:8, 50:11, 51:4, 51:8, 51:13, 51:18, 51:19, 52:6, 53:8, 53:11, 53:17, 53:21, 54:1, 54:8, 54:13
Baca's [8] - 7:15, 9:17, 14:14, 18:1, 20:4, 44:22, 50:25, 52:22
Backpage [1] - 32:1
Bail [2] - 48:16, 49:3
bar [1] - 28:5
based [7] - 8:22, 9:22, 27:16, 38:3, 38:11, 43:13, 48:23

basis [1] - 43:12
bear - 28:7
bears [1] - 27:25
became [2] - 38:1, 41:10
become [1] - 14:6
becomes [2] - 10:5, 45:9
BEFORE [1] - 1:10
began [3] - 8:9, 10:23, 17:18
beginning [3] - 15:13, 23:13, 25:10
behalf [3] - 21:5, 41:3, 41:4
behaving [1] - 10:1
behavior [14] - 20:4, 21:18, 23:3, 23:4, 32:7, 32:10, 32:12, 32:13, 32:21, 32:22, 33:21, 33:23, 41:6, 41:20
behaviors [1] - 14:15
belief [4] - 8:22, 8:25, 31:21, 41:15
bench - 43:10, 43:19, 43:21, 43:22, 46:19, 46:20, 46:22, 46:24
best [2] - 55:7
between [8] - 8:21, 9:4, 9:25, 19:17, 24:2, 24:4, 24:10
bidding [2] - 41:5
bit [1] - 38:20
bond [6] - 25:22, 29:4, 48:14, 54:1, 54:9, 54:14
bottom [1] - 20:6
bracelet [1] - 47:4
break [1] - 15:9
breaking [1] - 20:14
briefly [2] - 19:14, 43:4
brings [1] - 35:23
brought [4] - 22:20, 31:1, 32:13, 43:23
brutalized [1] - 38:2
brutally [2] - 37:22, 37:24
burden [3] - 28:6, 28:11, 48:24
business [1] - 52:14
BY [14] - 1:21, 4:12, 5:23, 6:22, 7:8, 8:8, 11:14, 12:7, 13:9, 14:9, 15:10, 16:5, 16:13, 17:2

**C**

calendar [1] - 3:7
Calvert [2] - 37:10, 37:17
cannot [9] - 25:2, 25:9, 30:25, 33:19, 41:19, 45:7, 47:7, 47:8, 53:22
carrying [1] - 10:22
Case [1] - 3:1
case [37] - 3:7, 5:2, 5:5, 5:7, 5:9, 5:24, 10:24, 10:25, 17:17, 17:22, 20:4, 20:5, 22:3, 22:22, 22:25, 23:6, 23:10, 23:18, 28:9, 29:15, 32:11, 33:10, 36:15, 36:24, 38:21, 41:10, 41:23, 42:7, 44:12, 45:6, 45:7, 45:9, 46:13, 49:3, 53:1, 53:10, 54:4
cases [3] - 21:24, 35:24, 36:9
caused [1] - 29:25
causes [1] - 32:9
causing [2] - 19:22, 32:21
cell [1] - 20:10
certain [3] - 10:6, 11:25, 22:24
certainly [2] - 24:14, 30:25
CERTIFICATE [1] - 55:1
certify [1] - 55:4
chambers [1] - 3:17
chance [1] - 20:19
change [1] - 24:21
changed [1] - 45:17
changes [1] - 36:10
characteristics [4] - 50:23, 50:25, 52:5, 52:22
characters [1] - 49:7
charge [11] - 18:2, 19:17, 23:10, 23:13, 24:1, 24:15, 24:17, 24:20, 49:22, 49:25, 50:17
charged [2] - 8:13, 14:21, 23:1, 23:2, 23:9, 23:19, 27:18, 29:7, 36:11, 49:5, 49:11, 49:12
charges [14] - 14:20, 19:14, 22:20, 22:21,

22:22, 23:12, 23:16, 23:23, 27:13, 28:4, 36:2, 49:14, 50:15, 51:6
charging [2] - 6:1, 15:2
check [3] - 3:18, 7:19
checked [1] - 7:22
Chief [1] - 54:4
Child [1] - 4:23
child [3] - 8:23, 25:12, 37:21
children [2] - 27:19, 38:17
chose [2] - 16:6, 42:19
CHRISTINE [1] - 1:20
Christine [2] - 3:4, 44:18
circle [1] - 35:15
circumstances [3] - 38:12, 49:5, 49:10
clarification [1] - 6:16
clear [5] - 4:13, 18:13, 42:10, 48:20, 53:5
clearly [1] - 20:5
client [2] - 25:3, 25:4
close [2] - 37:17, 47:15
clothing [1] - 5:17
club [1] - 31:24
clubs [7] - 32:25, 33:1, 33:2, 33:13, 33:17, 38:25
co [2] - 14:6, 14:12
co-conspirator [2] - 14:6, 14:12
Coach [2] - 37:6, 39:22
Code [4] - 15:19, 25:8, 27:20, 27:23
coerced [2] - 25:25, 53:12
coercion [8] - 6:3, 10:9, 19:21, 24:16, 25:20, 27:20, 31:10, 50:6
Coles [1] - 37:12
collect [2] - 18:6, 21:4
collected [1] - 21:5
Columbia [3] - 1:23, 41:13, 55:13
COLUMBIA [2] - 1:1, 1:15
combination [2] - 44:11, 45:15

coming [1] - 54:16
comments [1] - 42:17
commercial [11] - 19:19, 19:22, 20:6, 22:15, 31:24, 32:8, 32:24, 33:1, 33:10, 33:18, 33:22
commit [2] - 6:2, 27:19
committed [2] - 14:20, 27:24
communicating [2] - 52:13, 53:17
communications [1] - 24:10
community [14] - 31:5, 34:1, 39:7, 45:16, 47:8, 48:19, 48:22, 49:8, 51:17, 51:20, 52:17, 52:19, 53:8, 53:23
comparison [1] - 28:6
complaint [10] - 6:1, 8:12, 9:1, 9:13, 14:12, 14:21, 27:11, 27:13, 27:18, 36:2
complete [2] - 36:20, 55:6
compliance [4] - 30:17, 30:22, 34:3, 42:9
compliant [1] - 42:9
complicated [1] - 21:25
complied [2] - 33:7, 52:10
comply [4] - 31:3, 32:12, 42:22, 43:2
complying [1] - 42:3
comprehensive [1] - 27:15
computer [1] - 47:6
concede [1] - 24:20
concern [4] - 33:6, 33:11, 35:8, 40:17
conclude [4] - 52:20, 53:2, 53:4, 53:19
concluded [1] - 54:20
concludes [1] - 54:19
conclusion [1] - 54:8
conclusions [1] - 15:8
condition [4] - 35:10, 36:19, 40:16, 52:2
conditions [20] - 30:16, 31:3, 31:4,

31:8, 33:7, 39:19, 40:23, 41:21, 42:3, 42:23, 44:1, 44:11, 45:15, 48:17, 48:21, 51:9, 53:6, 53:15, 53:20, 53:23
conduct [8] - 23:19, 23:20, 31:7, 31:12, 34:8, 36:4, 50:8, 53:22
conference [1] - 13:14
confine [1] - 53:18
confinement [5] - 44:4, 52:1, 52:10, 53:7, 53:20
conflicting [1] - 50:1
Congress [3] - 21:22, 35:20, 38:16
connection [2] - 26:19, 51:12
consider [6] - 20:2, 49:4, 50:24, 51:16, 51:24, 52:24
consideration [2] - 51:6, 52:3
considered [3] - 14:24, 20:3, 48:10
considering [1] - 44:4
consist [1] - 51:23
conspiracy [7] - 6:2, 15:18, 23:15, 24:1, 24:12, 24:15, 27:19
conspirator [2] - 14:6, 14:12
conspired [1] - 19:18
constitutes [1] - 55:4
Constitution [2] - 1:23, 55:14
contact [2] - 37:22, 39:10, 53:15
contacted [1] - 37:9
contend [4] - 31:12, 32:16, 40:4, 48:2
continue [6] - 20:22, 31:8, 41:20, 51:21, 52:19, 53:21
continued [2] - 23:7, 32:1
continues [1] - 33:21
continuing [5] - 32:15, 32:17, 48:3, 52:6, 52:8
contradicted [2] - 26:12, 26:13
contradictory [2] - 7:5, 25:3
control [2] - 25:14, 47:7

conversations [3] - 24:24, 44:25, 50:1
conviction [1] - 38:23
convinced [1] - 53:5
convincing [2] - 48:21, 53:6
cooperating [2] - 15:21, 25:9
cooperation [1] - 15:24
correct [15] - 6:19, 7:24, 7:25, 9:9, 9:15, 9:16, 9:18, 9:23, 11:22, 11:25, 12:2, 12:4, 14:22, 18:9, 26:4
corroborated [2] - 44:23, 49:25
corroborates [1] - 20:11
corroborating [1] - 26:11
counsel [12] - 5:19, 20:20, 25:2, 38:5, 42:17, 42:18, 42:19, 42:21, 42:24, 43:3, 54:18
counsel's [1] - 22:23
count [2] - 21:20, 21:21
counters [1] - 51:8
County [14] - 7:14, 7:16, 7:21, 7:24, 29:15, 30:6, 30:18, 30:22, 32:11, 36:16, 37:10, 37:17, 41:12, 42:23
couple [1] - 44:16
course [12] - 5:12, 5:24, 7:2, 7:9, 7:12, 9:3, 9:11, 15:11, 16:14, 17:3, 22:25, 28:8
Court [33] - 1:22, 1:22, 18:13, 20:2, 25:21, 29:8, 30:15, 30:17, 31:4, 34:23, 36:3, 38:13, 38:20, 39:8, 39:12, 39:18, 39:22, 40:9, 40:23, 41:19, 41:20, 43:2, 43:5, 43:9, 44:3, 44:11, 46:18, 47:12, 48:17, 53:22, 54:11, 55:12, 55:13
court [17] - 5:21, 21:1, 27:16, 34:4, 37:6, 37:8, 37:11, 39:20, 40:8, 40:22,

46:6, 46:7, 46:9, 46:15, 46:21, 54:16
COURT [60] - 1:1, 3:9, 3:14, 3:19, 3:22, 4:6, 5:22, 6:14, 6:20, 8:3, 8:6, 11:12, 12:17, 12:20, 13:4, 13:8, 15:7, 16:2, 16:9, 16:12, 19:7, 19:10, 19:13, 20:19, 20:22, 23:21, 26:1, 26:16, 26:18, 27:6, 30:10, 30:19, 31:11, 31:17, 32:14, 33:12, 33:16, 33:25, 36:12, 36:14, 39:25, 40:3, 40:18, 41:22, 42:11, 42:14, 43:16, 44:15, 44:20, 45:2, 45:22, 45:25, 47:10, 47:12, 47:20, 47:23, 48:2, 48:6, 48:9, 54:13
Court's [8] - 7:7, 31:3, 33:3, 35:17, 41:14, 42:15, 43:17, 44:8
courthouse [1] - 10:24
COURTROOM [10] - 3:1, 3:20, 4:7, 4:9, 12:18, 27:2, 27:4, 43:7, 47:18, 47:22
courtroom [4] - 3:6, 5:15, 39:22, 51:2
crime [7] - 22:4, 33:22, 35:20, 36:7, 36:8, 36:11, 38:12
crimes [4] - 27:18, 29:7, 35:3, 35:25
Criminal [1] - 1:3
criminal [15] - 6:1, 8:10, 8:12, 8:25, 9:13, 14:11, 14:15, 14:20, 14:21, 14:25, 24:17, 27:10, 27:13, 27:18, 36:2
criminals [1] - 39:15
Cross [1] - 2:3
cross [1] - 22:1
CROSS [1] - 8:7
CROSS-EXAMINATION [1] - 8:7
CRR [3] - 1:21, 55:3, 55:12
crying [1] - 37:4
CTF [1] - 38:3
current [1] - 39:4
custody [3] - 18:14, 19:3, 54:14

customers [2] - 31:24, 31:25
cut [1] - 53:10

D

danger [14] - 21:17, 31:8, 31:11, 33:16, 34:1, 34:23, 39:6, 39:13, 40:23, 49:8, 51:17, 51:20, 52:12, 53:19
dangerous [11] - 9:5, 9:7, 10:14, 24:7, 30:11, 30:13, 31:12, 34:2, 34:8, 34:15, 41:5
dangerousness [4] - 32:5, 32:9, 35:19, 43:13
date [5] - 14:10, 17:19, 18:21, 36:21, 44:23
Dated [1] - 55:10
dates [4] - 32:25, 33:1, 33:20
daughter [1] - 37:15
Davis [7] - 3:3, 19:13, 20:22, 29:2, 46:4, 47:20, 47:24
DAVIS [47] - 1:14, 3:16, 4:4, 4:12, 5:20, 5:23, 6:11, 6:19, 6:21, 6:22, 7:7, 7:8, 8:1, 11:9, 11:13, 12:21, 14:8, 15:6, 16:1, 17:2, 19:5, 19:9, 19:16, 20:16, 20:23, 26:2, 26:17, 27:1, 29:5, 30:13, 30:21, 31:16, 31:18, 32:20, 33:15, 33:17, 35:1, 36:13, 40:20, 41:25, 42:13, 42:15, 43:17, 48:1, 48:5, 48:7, 54:12
days [1] - 46:21
DC [7] - 1:6, 1:17, 1:19, 1:24, 16:17, 39:10, 55:14
de [1] - 25:8
dealing [3] - 30:24, 31:6
December [7] - 9:5, 19:18, 23:25, 24:2, 24:11, 46:19, 46:21
decide [3] - 42:6, 42:7
decision [7] - 14:10, 28:18, 42:1, 42:6,

47:13, 53:9, 53:25
Defendant [13] - 1:7, 3:4, 3:5, 5:21, 21:3, 21:4, 43:11, 43:15, 48:19, 49:6, 49:12, 49:19, 50:23
DEFENDANT [1] - 1:18
Defendant's [1] - 49:6
Defense [1] - 12:18
defense [18] - 5:19, 6:15, 8:3, 12:23, 22:23, 25:1, 27:8, 27:25, 28:2, 28:9, 34:16, 50:4, 50:6, 50:20, 51:3, 51:25, 52:21, 54:11
defense's [2] - 50:18, 54:2
defenses [1] - 24:17
definitely [1] - 18:5
demonstrated [1] - 51:10
Department [3] - 4:18, 4:20, 37:17
DEPUTY [10] - 3:1, 3:20, 4:7, 4:9, 12:18, 27:2, 27:4, 43:7, 47:18, 47:22
describing [1] - 34:10
designated [1] - 38:16
designed [2] - 29:19, 37:20
despite [2] - 50:19, 52:7
detained [1] - 30:5
Detective [10] - 4:5, 4:17, 5:25, 6:25, 12:25, 17:3, 27:7, 48:11, 49:24, 50:14
detective [3] - 4:13, 5:8, 6:12
detention [27] - 3:8, 3:10, 3:15, 3:25, 7:10, 22:10, 26:23, 28:19, 28:22, 28:23, 29:6, 29:12, 30:9, 30:14, 34:21, 39:1, 40:4, 40:5, 47:13, 49:2, 49:11, 49:16, 49:17, 49:20, 50:17, 50:21, 53:3
determine [1] - 48:16
devices [3] - 44:6, 47:3, 47:9
difference [1] - 46:6
different [1] - 16:4

differs [1] - 46:3
difficult [1] - 53:9
diligent [1] - 42:20
DiMauro [2] - 12:13, 12:24
DIRECT [1] - 4:11
Direct [1] - 2:3
direct [1] - 23:4
directed [1] - 14:4
direction [1] - 10:2
directions [1] - 53:10
directly [1] - 34:15
discovery [2] - 12:23, 23:17
disorder [1] - 38:9
displayed [1] - 21:19
displeased [1] - 42:8
disputing [1] - 41:22
DISTRICT [3] - 1:1, 1:1, 1:15
district [1] - 55:13
District [5] - 1:22, 1:23, 41:12, 54:5, 55:13
disturbed [1] - 38:2
document [1] - 13:5
documents [1] - 36:21
done [2] - 7:20, 45:6
double [1] - 3:18
double-check [1] - 3:18
down [3] - 15:9, 25:10, 32:1
draw [1] - 5:2
drop [1] - 22:17
drug [4] - 10:20, 37:18, 39:2
duress [7] - 15:5, 19:20, 22:24, 24:16, 25:20, 28:3, 50:6
during [12] - 5:12, 5:24, 7:2, 7:9, 7:12, 9:3, 9:11, 15:11, 17:3, 19:2, 22:25, 48:8

E

easy [1] - 23:10
EDWARDS [2] - 1:21, 55:3
Edwards [1] - 55:12
effort [1] - 42:20
efforts [1] - 42:20
either [4] - 32:17, 46:3, 54:4
elaborates [1] - 46:4
electronic [3] - 44:6, 47:3, 47:9

elects [1] - 28:15
elements [1] - 19:14
Eleventh [1] - 1:16
eliminate [1] - 52:10
employment [1] - 32:2
endanger [1] - 52:17
endangering [1] - 33:13
enforced [1] - 21:9
enforcement [2] - 22:19, 27:22
engage [7] - 19:22, 32:12, 32:15, 32:17, 32:22, 34:8, 48:3
engaged [11] - 22:14, 31:13, 32:7, 32:24, 33:8, 33:18, 33:21, 35:6, 36:3, 48:7, 50:8
engaging [2] - 32:21, 53:21
ensure [5] - 30:16, 39:19, 45:15, 48:22, 53:7
entails [1] - 37:13
enterprise [2] - 22:15, 32:9
entertain [1] - 30:16
environment [2] - 31:23, 35:16
environments [3] - 31:22, 35:10, 35:11
equivocate [1] - 25:11
escapes [1] - 43:10
especially [2] - 23:13, 23:15
ESQ [2] - 1:14, 1:18
essentially [1] - 53:12
estimate [2] - 26:22, 47:14
evaluate [1] - 48:13
evaluated [1] - 48:15
evaluating [2] - 51:6, 52:25
evidence [36] - 10:1, 10:4, 10:8, 15:4, 15:16, 15:20, 15:24, 16:6, 19:15, 19:23, 20:9, 24:9, 24:11, 24:15, 24:16, 26:10, 26:11, 32:21, 33:5, 33:19, 34:11, 35:5, 38:19, 38:20, 48:10, 48:21, 48:25, 49:6, 49:18, 49:21, 49:24, 50:16, 50:19, 50:20, 53:6

exact [2] - 17:9, 17:19
exactly [2] - 18:8, 46:14
EXAMINATION [3] - 4:11, 8:7, 17:1
except [2] - 39:1, 39:7
exclusion [2] - 25:4, 38:17
exclusively [1] - 25:13
excuse [1] - 45:3
excused [3] - 19:11, 19:12, 54:18
exercised [1] - 26:5
Exhibit [1] - 12:18
exhibit [1] - 17:12
explain [1] - 14:3
explained [2] - 14:16, 18:3
exploitation [1] - 8:23
Exploitation [1] - 4:23
explosives [1] - 38:15
exposure [2] - 36:5, 49:13
expressly [1] - 52:21
extensive [1] - 23:17
extent [2] - 29:22, 48:23
extreme [1] - 34:24

F

faces [1] - 49:13
facilitating [1] - 52:14
facing [2] - 22:21, 35:24
fact [12] - 7:23, 9:8, 12:22, 16:15, 20:2, 25:14, 25:15, 26:5, 26:10, 29:13, 32:2, 52:22
factor [9] - 38:18, 49:10, 49:17, 49:18, 50:19, 50:21, 50:22, 51:16, 53:2
factors [4] - 29:11, 38:11, 49:4, 53:5
facts [20] - 5:25, 6:6, 6:9, 6:17, 6:24, 7:3, 7:5, 15:2, 20:25, 21:11, 22:10, 26:7, 26:15, 26:19, 27:9, 28:24, 28:25, 29:3,

49:23, 50:13
failed [1] - 51:13
failures [1] - 36:16
false [1] - 22:5
family [8] - 38:24, 39:13, 39:17, 40:14, 41:8, 51:2, 54:16
favor [6] - 49:11, 49:17, 49:19, 50:17, 50:21, 53:3
FBI's [1] - 4:23
fear [1] - 13:21
federal [2] - 24:21, 24:23
Fifth [1] - 25:4
fighting [1] - 33:23
file [1] - 8:12
filed [2] - 3:18, 8:25
final [1] - 42:1
financially [1] - 38:24
fine [2] - 13:2, 18:22
firearms [6] - 9:6, 9:8, 10:22, 38:15, 40:14, 40:16
first [7] - 3:24, 18:16, 19:17, 21:20, 36:15, 49:10, 49:16
flee [1] - 36:10
flight [6] - 30:11, 30:20, 35:23, 37:2, 39:6, 46:25
Floor [1] - 1:16
focused [1] - 34:5
follow [4] - 31:7, 40:22, 41:14, 41:15
followed [1] - 21:8
followup [2] - 47:20, 47:24
FOR [6] - 1:1, 1:14, 1:15, 1:18, 1:20, 2:5
Force [1] - 4:24
force [6] - 4:25, 6:2, 10:8, 19:21, 27:19, 31:10
forced [1] - 34:7
foregoing [1] - 55:4
form [3] - 11:9, 11:12, 11:13
forth [12] - 23:14, 28:25, 29:6, 30:14, 31:1, 35:2, 35:21, 42:23, 48:16, 49:23, 50:13, 53:24
forward [1] - 32:25
four [1] - 49:4
fourth [2] - 51:16, 53:2
Fourth [1] - 1:16
fraud [4] - 6:2, 19:21,

27:20, 31:10
Friday [1] - 38:7
friends [1] - 25:16
FROM [1] - 1:11
frustrated [1] - 22:11
FTR [3] - 1:11, 27:3, 47:19
FTR-Gold [2] - 27:3, 47:19
FTR-GOLD [1] - 1:11
full [2] - 4:14, 55:5
fully [1] - 23:18

G

gathering [2] - 31:23, 31:25
geared [1] - 51:14
gentleman [1] - 16:21
geography [1] - 40:6
girl [4] - 13:23, 37:23, 38:2, 38:22
given [14] - 6:8, 28:5, 28:10, 34:2, 34:16, 49:1, 49:12, 49:13, 50:17, 51:22, 52:2, 53:11, 53:14, 53:16
Gold [2] - 27:3, 47:19
GOLD [1] - 1:11
government [1] - 25:10
GOVERNMENT [3] - 1:14, 2:5, 4:8
Government [42] - 3:3, 3:14, 4:3, 4:4, 8:1, 19:25, 20:1, 20:3, 20:17, 22:9, 22:13, 22:25, 23:14, 24:3, 24:5, 26:6, 26:14, 27:8, 28:1, 28:21, 28:22, 29:6, 29:11, 29:14, 29:22, 30:2, 35:4, 38:21, 40:19, 40:21, 48:2, 48:20, 49:21, 50:3, 50:5, 50:9, 51:8, 51:19, 52:4, 52:6, 53:5, 54:10
Government's [7] - 23:5, 33:6, 33:11, 35:8, 48:13, 48:23, 48:24
GPS [1] - 47:4
grand [10] - 11:8, 11:19, 11:20, 11:21, 11:25, 18:17, 18:20, 24:22, 25:6, 31:2
guess [1] - 40:12

**guilty** [1] - 24:18
**gun** [9] - 9:14, 9:17, 10:19, 10:20, 10:25, 22:20, 22:21, 32:6, 40:13
**guns** [10] - 10:17, 17:5, 17:8, 21:14, 23:13, 31:6, 31:19, 39:15, 41:3, 41:19

## H

**handcuffs** [1] - 38:5, 38:6
**handed** [1] - 43:18
**Harvey** [2] - 6:17, 30:3
**Harvey's** [1] - 3:17
**head** [1] - 9:15
**Health** [1] - 37:17
**health** [5] - 37:19, 38:8, 39:3, 51:14
**hear** [4] - 11:10, 20:18, 35:4, 44:13
**heard** [5] - 23:22, 27:6, 27:11, 38:20, 46:4
**hearing** [16] - 3:8, 3:10, 3:23, 3:24, 3:25, 28:20, 30:2, 40:9, 40:10, 43:25, 44:1, 45:8, 48:12, 51:10
**HEARING** [1] - 1:10
**hearings** [4] - 3:12, 46:10, 46:17, 51:11
**HEATHER** [2] - 1:18, 1:18
**Heather** [1] - 3:3
**height** [1] - 43:8
**held** [9] - 9:14, 25:22, 29:4, 38:3, 42:11, 48:13, 54:1, 54:8, 54:14
**help** [3] - 33:8, 37:17, 37:20
**hereby** [1] - 55:3
**herself** [14] - 23:7, 26:9, 28:2, 29:25, 31:21, 32:18, 35:9, 37:5, 39:7, 50:4, 50:11, 51:4, 53:12
**high** [9] - 21:25, 36:4, 36:9, 37:13, 45:12, 45:19, 45:21, 47:1, 49:13
**high-intensity** [5] - 37:13, 45:12, 45:19, 45:21, 47:1
**HISP** [3] - 37:15,

39:1, 39:8
**history** [7] - 49:7, 50:22, 50:25, 51:9, 52:5, 52:22, 53:14
**hold** [1] - 3:25
**home** [14] - 37:4, 37:10, 37:15, 37:18, 39:1, 40:5, 44:4, 47:5, 52:1, 52:9, 53:7, 53:18, 53:20
**Honor** [31] - 3:13, 4:4, 5:20, 6:11, 6:19, 12:16, 12:21, 13:7, 19:6, 19:9, 19:16, 20:15, 20:23, 23:24, 26:2, 27:1, 27:4, 29:5, 32:11, 35:1, 36:13, 40:20, 40:21, 43:4, 44:9, 45:5, 45:20, 45:24, 48:1, 48:5, 54:12
**Honor's** [1] - 35:4
**HONORABLE** [1] - 1:10
**hoping** [1] - 47:15
**hour** [2] - 38:7
**house** [3] - 40:6, 40:15, 40:17
**human** [3] - 21:24, 31:10, 37:20
**Human** [1] - 4:24
**human-trafficking** [1] - 21:24

## I

**i.e** [1] - 32:24
**identification** [2] - 5:21, 12:19
**identified** [2] - 52:13, 52:21
**identify** [2] - 5:17, 19:15
**illegal** [4] - 33:23, 34:14, 51:21, 53:22
**immediately** [1] - 40:9
**immunity** [1] - 26:6
**important** [1] - 10:5
**impose** [1] - 48:18
**in-court** [1] - 5:21
**inaudible** [3] - 14:13, 24:22, 26:6
**inaudible]** [2] - 12:23, 43:7
**incarcerated** [13] - 11:3, 17:21, 22:4, 23:8, 25:15, 31:15, 31:20, 32:19, 34:2,

34:24, 48:4, 48:8, 51:22
**incarceration** [2] - 22:8, 31:13
**include** [2] - 28:24, 39:9
**included** [6] - 7:3, 12:22, 20:25, 26:7, 27:9, 53:15
**including** [2] - 24:6, 52:22
**incorporated** [1] - 27:10
**incredible** [1] - 37:7
**independent** [2] - 50:10
**indicate** [1] - 37:9
**indicated** [1] - 52:6
**indicates** [2] - 34:4, 36:25
**indicating** [1] - 24:12
**indicia** [1] - 21:6
**indicted** [2] - 22:21, 54:5
**indictment** [1] - 54:6
**individual** [2] - 37:24, 39:21
**individuals** [1] - 9:4
**indulgence** [5] - 7:7, 33:3, 42:15, 43:17, 44:8
**industry** [1] - 20:6
**ineffective** [1] - 25:1
**inform** [1] - 14:19
**information** [4] - 10:13, 10:16, 45:8, 46:2
**informed** [3] - 23:5, 23:18, 28:16, 29:16, 37:14
**initial** [2] - 26:13, 44:22
**injure** [1] - 9:20
**injured** [1] - 25:24
**innocence** [1] - 28:15
**innocent** [1] - 34:25
**inquire** [1] - 39:23
**inside** [1] - 9:17
**instance** [1] - 31:5
**instead** [2] - 14:7, 33:8
**instruct** [1] - 11:5
**instructed** [1] - 11:18
**instructing** [1] - 25:17
**instrument** [1] - 23:7
**intensity** [5] - 37:13, 45:12, 45:19, 45:21,

47:1
**intentionally** [1] - 16:7
**interference** [1] - 27:22
**intermediary** [1] - 18:5
**interview** [11] - 5:13, 12:4, 12:10, 12:14, 12:22, 13:1, 13:2, 13:11, 13:16, 13:17, 13:19
**interviewed** [3] - 9:3, 37:12, 50:2
**interviews** [1] - 9:12
**investigating** [3] - 5:9, 8:10, 14:13
**investigation** [16] - 5:4, 5:12, 5:24, 7:2, 7:9, 7:12, 8:22, 9:3, 9:11, 9:22, 10:23, 12:9, 15:11, 16:14, 17:4, 17:11
**investigations** [1] - 15:23
**investigative** [1] - 22:11
**invite** [1] - 14:15
**invoke** [1] - 30:1
**involve** [2] - 21:25, 38:17
**involved** [10] - 5:4, 14:15, 17:4, 17:8, 17:22, 22:17, 29:20, 38:1, 46:14, 46:16
**involvement** [3] - 5:7, 18:1, 21:6
**involving** [2] - 5:2, 17:17
**issued** [5] - 43:19, 43:21, 46:19, 46:20, 46:23

## J

**J-O-H-N-S-O-N** [1] - 4:16
**jail** [4] - 11:15, 33:13, 34:11, 38:9
**January** [7] - 8:21, 9:4, 18:18, 19:18, 23:25, 24:2, 24:11
**Jencks** [1] - 12:6
**Jeremiah** [5] - 2:6, 4:5, 4:15, 8:9, 27:7
**JEREMIAH** [2] - 4:8, 4:15
**Jessica** [1] - 37:6
**job** [1] - 37:7

**JOHNSON** [1] - 4:8
**Johnson** [16] - 2:6, 4:5, 4:15, 4:17, 5:25, 6:25, 8:9, 12:25, 17:3, 27:7, 29:1, 42:12, 48:11, 49:24, 50:14
**Johnson's** [1] - 27:14
**joined** [1] - 15:18
**JUDGE** [1] - 1:11
**Judge** [6] - 3:17, 3:21, 6:17, 30:3, 54:4, 54:5
**July** [2] - 17:18, 17:20
**jumpsuit** [1] - 5:19
**June** [2] - 8:21, 9:25
**jurisdiction** [2] - 30:23, 39:16
**jury** [11] - 11:8, 11:19, 11:20, 11:21, 11:25, 18:17, 18:20, 24:22, 25:6, 28:16, 31:2
**justice** [5] - 6:3, 41:1, 41:18, 42:22, 52:15
**juvenile** [3] - 8:14, 8:16, 19:24

## K

**keep** [3] - 31:5, 31:6, 37:24
**Kenya** [1] - 3:3
**KENYA** [1] - 1:14
**kind** [6] - 18:3, 21:22, 25:21, 40:10
**knowing** [3] - 15:5, 15:25, 21:9
**knowingly** [1] - 15:18
**knowledge** [1] - 13:2
**known** [5] - 9:6, 9:8, 10:21, 24:6, 40:6

## L

**lack** [2] - 30:22, 34:3
**lacking** [1] - 28:4
**laid** [6] - 20:16, 21:7, 21:23, 29:11, 30:14
**larger** [1] - 33:22
**last** [4] - 15:13, 18:19, 42:16, 44:3
**latest** [1] - 47:14
**LAW** [1] - 1:18
**law** [1] - 22:18

lawyer [1] - 40:7
lead [3] - 5:8, 34:13, 49:16
learn [4] - 16:14, 16:17, 16:20, 17:4
learned [4] - 7:14, 9:11, 9:19, 11:3
least [1] - 24:8
leave [5] - 21:12, 25:5, 30:23, 39:16
leaves [1] - 47:5
left [2] - 18:10, 40:6
legal [2] - 15:8, 48:15
level [3] - 21:25, 32:8
lies [1] - 33:6
lieutenant [1] - 20:7
limit [1] - 25:15
line [2] - 21:18, 26:9
Lisa [1] - 55:12
LISA [1] - 1:21, 55:3
listen [1] - 11:15
listened [1] - 11:7
live [2] - 35:18, 37:10
locally [1] - 37:17
location [1] - 5:18
lockdown [1] - 38:4
look [8] - 6:23, 17:13, 18:21, 30:5, 33:25, 35:25, 43:5, 43:9
looking [2] - 32:2, 46:9
looks [1] - 43:19
loud [1] - 4:13
Love [1] - 36:17
love [1] - 36:22
low [1] - 43:14
lower [2] - 28:5, 28:11

M

ma'am [1] - 8:5
magistrate [1] - 3:1
MAGISTRATE [1] - 1:11
man [1] - 25:13
manipulated [1] - 53:12
manipulation [2] - 22:1, 32:8
March [1] - 22:5
marked [1] - 12:18
marshals [1] - 54:14
Maryland [7] - 41:23, 44:2, 45:23, 46:3, 46:7, 51:12
matches [1] - 19:15
materials [1] - 24:13

matter [3] - 3:9, 52:7, 54:19
matters [1] - 51:12
mean [6] - 10:18, 10:20, 15:20, 15:22, 32:16, 42:8
meaning [1] - 48:7
means [1] - 32:23
meet [1] - 40:7
meeting [1] - 32:24
members [1] - 52:18
memorandum [9] - 3:15, 3:16, 22:11, 26:23, 28:23, 29:7, 29:12, 30:9, 30:15
mens [4] - 24:18, 25:19, 28:4
mental [6] - 37:19, 38:8, 38:23, 39:3, 51:14
MERIWEATHER [1] - 1:10
messages [5] - 20:10, 22:14, 24:12, 26:11, 44:7
Metropolitan [2] - 4:18, 4:19
might [1] - 44:24
mind [2] - 41:17, 50:15
minimis [1] - 25:8
minutes [1] - 26:22
misdemeanor [2] - 38:22, 39:5
mislead [1] - 22:13
misquoting [1] - 33:5
mitigates [1] - 43:11
Monday [1] - 38:7
money [3] - 18:6, 21:4, 21:5
monitor [7] - 44:4, 44:5, 44:6, 47:2, 47:4, 47:7, 53:17
monitoring [2] - 35:13, 47:3
Montgomery [12] - 7:14, 7:15, 7:21, 7:24, 29:15, 30:6, 30:18, 30:22, 32:11, 36:16, 41:12, 42:23
months [1] - 30:24
moreover [3] - 12:24, 21:7, 41:7
most [3] - 10:21, 28:24, 46:22
mother [3] - 37:6, 37:23, 39:14
mouth [2] - 9:17, 34:18

move [2] - 30:1, 41:2
moved [2] - 22:6, 41:18
movement [2] - 17:5, 31:19
movements [3] - 38:6, 44:5, 47:4
moving [2] - 17:22, 41:3
MPD [1] - 27:7
MS [72] - 3:12, 3:16, 4:4, 4:12, 5:20, 5:23, 6:11, 6:19, 6:21, 6:22, 7:7, 7:8, 8:1, 8:5, 8:8, 11:9, 11:10, 11:13, 11:14, 12:6, 12:7, 12:16, 12:21, 13:7, 13:9, 14:8, 14:9, 15:6, 15:10, 16:1, 16:5, 16:8, 16:10, 16:13, 16:24, 17:2, 19:5, 19:9, 19:16, 20:15, 20:16, 20:17, 20:21, 20:23, 23:24, 26:2, 26:17, 27:1, 29:5, 30:13, 30:21, 31:16, 31:18, 32:20, 33:15, 33:17, 35:1, 36:13, 36:15, 40:2, 40:5, 40:20, 41:25, 42:13, 42:15, 43:4, 43:8, 43:17, 48:1, 48:5, 48:7, 54:12
multiple [2] - 9:8, 15:22

N

name [1] - 4:14
nature [7] - 38:12, 44:7, 49:5, 49:7, 49:10, 50:1, 51:17
need [1] - 29:3
negate [1] - 20:4
negative [1] - 50:24
never [2] - 29:16, 29:17
new [2] - 35:6
next [3] - 5:19, 42:6, 42:8
niece [1] - 37:8
nightclubs [2] - 34:14, 52:8
no-contact [1] - 53:15
non [2] - 34:4, 48:24
non-appearance [2] - 34:4, 48:24
noncompliance [3] -

30:17, 51:9, 53:14
nonetheless [2] - 11:4, 50:18
Northwest [1] - 1:19
note [5] - 17:9, 39:12, 44:9, 47:1, 52:4
notes [3] - 50:9, 52:21, 55:5
nothing [1] - 3:25
notified [1] - 38:9
noting [1] - 27:25
notwithstanding [2] - 19:23, 28:13
November [2] - 12:3, 13:13
NW [3] - 1:16, 1:23, 55:14

O

O.G [1] - 9:19
O.G.'s [1] - 9:14
O.S [17] - 9:12, 17:24, 18:6, 18:10, 18:11, 19:20, 19:22, 20:8, 20:13, 20:16, 21:2, 21:5, 21:7, 21:11, 21:15, 21:16, 31:23
O.S.'s [1] - 20:11
objection [8] - 6:14, 11:9, 11:11, 11:13, 12:20, 14:8, 15:6, 16:1
obstruct [1] - 27:21
obstructed [2] - 41:18, 42:22
obstructing [1] - 41:1
obstruction [14] - 6:3, 21:21, 21:22, 21:23, 23:15, 25:23, 27:21, 30:21, 48:8, 49:13, 49:25, 51:23, 52:15
obstruction-of-justice [1] - 52:15
obviously [1] - 10:19
occurred [1] - 52:9
OF [5] - 1:1, 1:3, 1:10, 1:15, 1:18
offense [1] - 10:20, 15:3, 38:4, 38:12, 39:4, 49:5, 49:11
offered [5] - 26:5, 41:11, 48:12, 51:2, 51:14
offering [1] - 14:18

offers [1] - 29:24
OFFICE [1] - 1:15
office [1] - 12:3
Office [3] - 24:23, 25:5
officer [2] - 3:5, 7:19
Officer [1] - 29:1
OFFICER [6] - 44:18, 45:1, 45:5, 45:24, 46:5, 47:11
officers [1] - 7:13
OFFICES [1] - 1:18
Official [1] - 1:22
official [1] - 55:12
officials [6] - 22:19, 24:21, 24:23, 25:10, 29:17, 50:3
older [1] - 16:15
once [2] - 17:21, 45:9
one [21] - 18:2, 18:5, 18:7, 21:25, 25:1, 26:3, 26:4, 30:12, 33:23, 34:8, 35:24, 36:6, 38:7, 38:18, 38:22, 46:1, 46:11, 46:12, 47:20, 47:24
one's [1] - 36:9
ongoing [1] - 19:19
operate [1] - 19:20
operated [2] - 22:6, 22:7
operating [2] - 22:24, 28:3
operation [2] - 21:12, 23:7
opportunity [7] - 5:13, 6:5, 6:8, 6:23, 7:10, 7:13, 14:18
opposite [1] - 37:2
opposition [1] - 24:5
orange [1] - 5:19
order [6] - 20:20, 39:9, 42:4, 48:12, 48:16, 53:25
ordered [1] - 39:1
orders [3] - 40:22, 41:14, 41:15
otherwise [1] - 54:6
outside [2] - 21:15, 22:7
overcome [1] - 29:10
overcomes [1] - 34:20
overwhelming [1] - 38:21
own [1] - 28:17

## P

**p.m** [2] - 1:7, 36:17
**Page** [2] - 43:12, 43:15
**paperwork** [1] - 18:21
**parents** [1] - 37:4
**part** [7] - 4:22, 12:8, 14:14, 33:10, 35:23, 41:16, 48:12
**participant** [2] - 14:7, 14:16
**participate** [2] - 29:19, 51:13
**participated** [1] - 29:18
**particularly** [1] - 53:11
**parties** [1] - 3:11
**past** [1] - 10:4
**pause** [2] - 27:3, 47:19
**penalties** [1] - 36:9
**penalty** [1] - 35:24
**pending** [10] - 10:24, 23:6, 23:12, 29:4, 48:14, 51:10, 51:12, 54:1, 54:9, 54:14
**people** [9] - 22:1, 24:8, 25:11, 29:20, 32:18, 33:9, 33:14, 35:6, 35:7
**per** [1] - 26:8
**perhaps** [1] - 28:3
**period** [1] - 23:25
**perjure** [1] - 26:9
**perjury** [1] - 24:22
**perpetrator** [1] - 22:2
**person** [8] - 5:15, 5:17, 13:16, 13:19, 20:9, 30:23, 38:19, 39:7
**persons** [1] - 32:6
**persuade** [1] - 54:3
**phase** [1] - 28:20
**phone** [8] - 11:4, 11:7, 11:15, 11:18, 20:10, 39:11, 44:5, 47:6
**physical** [1] - 38:23
**physically** [2] - 9:20, 50:12
**pimp** [5] - 11:8, 21:15, 22:16, 34:6, 34:11
**place** [3] - 33:7, 33:9, 41:9
**placed** [1] - 18:14

**placements** [1] - 37:16
**places** [2] - 33:2, 45:21
**Plaintiff** [1] - 1:4
**plan** [1] - 36:20
**plans** [1] - 41:17
**pocket** [1] - 20:13
**point** [11] - 14:24, 22:19, 22:23, 26:12, 28:19, 29:13, 30:8, 30:18, 35:4, 40:21, 44:3
**pointed** [1] - 50:6
**points** [3] - 22:24, 41:7, 43:18
**Police** [2] - 4:18, 4:19
**police** [1] - 22:6
**portion** [4] - 3:24, 6:9, 6:13, 6:24
**positing** [1] - 35:5
**positioning** [1] - 36:10
**positive** [2] - 50:24, 51:1
**posits** [1] - 22:9
**possibility** [2] - 50:20, 52:11
**possible** [1] - 53:16
**postpone** [1] - 36:22, 36:24
**posttraumatic** [1] - 38:9
**potential** [2] - 51:10, 51:11
**power** [1] - 25:14
**prejudice** [1] - 54:2
**preliminary** [4] - 3:7, 3:9, 3:23, 48:12
**PRELIMINARY/ DETENTION** [1] - 1:10
**prepare** [3] - 3:14, 3:16, 5:25
**prepared** [1] - 15:1
**preparing** [1] - 21:12
**preponderance** [1] - 48:24
**presence** [1] - 50:12
**present** [4] - 3:5, 4:3, 29:2, 51:2
**presented** [4] - 24:3, 27:16, 30:2, 49:8
**presents** [3] - 34:23, 36:4, 51:19
**presumed** [2] - 31:9, 34:25
**presumption** [18] - 28:14, 29:9, 29:10, 32:4, 34:16, 34:21,

35:2, 35:20, 35:24, 40:4, 44:12, 49:2, 49:16, 51:25, 52:1, 52:24, 52:25
**Pretrial** [20] - 37:9, 37:12, 39:23, 43:5, 43:9, 43:14, 43:25, 44:9, 44:13, 44:19, 44:25, 45:7, 45:9, 45:11, 46:12, 46:14, 46:15, 47:2, 47:6, 54:18
**pretrial** [13] - 3:5, 3:15, 28:22, 28:23, 44:17, 44:21, 45:4, 45:18, 45:23, 49:11, 49:17, 49:19, 53:3
**PRETRIAL** [7] - 1:20, 44:18, 45:1, 45:5, 45:24, 46:5, 47:11
**Pretrial's** [1] - 45:16
**prevent** [2] - 28:7, 53:17
**prevention** [1] - 27:22
**print** [1] - 3:20
**prison** [1] - 37:25
**probable** [13] - 3:24, 23:23, 27:12, 27:17, 28:5, 28:8, 28:14, 28:17, 29:8, 36:3, 38:14, 49:1, 49:15
**probation** [11] - 7:13, 7:19, 7:21, 7:22, 29:16, 30:6, 39:5, 42:9, 46:8, 46:11
**Probation** [1] - 46:16
**problems** [1] - 38:23
**procedural** [1] - 28:10
**proceed** [2] - 3:11, 3:12
**proceedings** [3] - 46:3, 54:20, 56:6
**process** [2] - 14:14, 14:18
**produced** [1] - 55:6
**product** [1] - 15:5
**proffer** [3] - 12:21, 32:14, 33:19
**proffered** [1] - 49:21
**proffering** [3] - 32:20, 32:23, 35:5
**proffers** [2] - 48:11, 51:19
**program** [5] - 29:24, 45:13, 45:19, 45:21, 47:2
**programs** [7] - 29:18, 37:19, 41:7,

41:16, 51:13, 51:14
**proof** [5] - 24:3, 24:18, 28:6, 28:11, 40:11
**proposing** [1] - 13:5
**prosecute** [1] - 22:12
**prosecution** [3] - 28:6, 41:10, 52:16
**prosecutions** [1] - 41:18
**prostitute** [1] - 34:13
**prostitutes** [1] - 34:12
**prostitution** [2] - 29:21, 52:9
**protect** [3] - 31:5, 47:8, 53:23
**prove** [1] - 48:20
**proverbial** [1] - 20:14
**provided** [2] - 12:23, 23:17
**pulled** [1] - 42:3
**purchased** [1] - 17:5
**purview** [1] - 14:20
**pushing** [1] - 32:18
**put** [8] - 7:20, 9:17, 23:14, 31:21, 33:7, 34:18, 35:9, 35:11
**puts** [1] - 35:8
**putting** [2] - 32:16, 33:24

## Q

**questions** [8] - 8:2, 8:4, 16:8, 16:10, 16:24, 19:5, 44:16, 50:7
**quickly** [1] - 18:21

## R

**raises** [1] - 50:7
**RDR** [3] - 1:21, 55:3, 55:12
**rea** [4] - 24:18, 25:19, 28:4
**reach** [1] - 45:7
**reached** [1] - 29:14
**read** [1] - 21:1
**ready** [1] - 18:24
**real** [1] - 40:17
**rearrest** [1] - 43:13
**reasonably** [1] - 48:18
**reasons** [1] - 36:6
**rebut** [1] - 44:12

**rebuts** [1] - 40:4
**rebuttable** [7] - 29:8, 29:10, 32:4, 35:2, 35:19, 35:23, 51:24
**rebuttal** [3] - 26:1, 40:19, 43:18
**rebutted** [3] - 51:25, 52:1, 52:25
**rebutting** [1] - 52:23
**received** [1] - 36:21
**receiving** [1] - 39:13
**recent** [1] - 10:21
**recently** [1] - 46:22
**recess** [3] - 26:18, 27:6, 47:12
**recollection** [5] - 13:6, 13:10, 17:12, 17:14, 18:23
**recommendation** [4] - 43:12, 45:14, 45:17
**recommendations** [2] - 44:10, 44:14
**record** [12] - 4:14, 5:20, 5:22, 12:22, 27:5, 27:16, 46:6, 46:7, 46:9, 46:15, 46:18, 47:22
**recorded** [5] - 13:10, 13:16, 13:19, 24:25, 49:25
**RECORDING** [1] - 1:11
**recording** [2] - 27:3, 47:19
**records** [1] - 20:10
**recruited** [2] - 33:9, 35:6
**recruiting** [1] - 35:12
**Red** [1] - 2:3
**REDIRECT** [1] - 17:1
**refer** [1] - 17:9
**referring** [2] - 14:1, 20:24
**reflect** [2] - 5:20, 5:22
**Reform** [2] - 48:16, 49:3
**refresh** [4] - 13:5, 17:12, 17:14, 18:22
**regarding** [3] - 3:15, 31:11, 51:11
**regulations** [1] - 39:9
**release** [15] - 30:16, 36:19, 37:13, 39:8, 39:9, 39:19, 40:16, 48:17, 49:9, 51:9, 51:11, 52:2, 52:7, 53:15, 53:22
**released** [10] - 36:23,

37:25, 38:6, 42:13, 51:7, 51:18, 51:20, 53:8, 53:20, 54:7
**reliable** [1] - 27:15
**reluctant** [1] - 26:20
**rely** [1] - 43:2
**remanded** [1] - 54:13
**reopened** [1] - 46:13
**repeat** [1] - 29:3
**rephrase** [2] - 15:7, 16:3
**report** [8] - 12:15, 18:8, 20:13, 43:10, 44:17, 44:21, 45:6, 45:23
**reported** [4] - 12:3, 21:3, 21:14, 29:17
**Reporter** [2] - 1:22, 55:12
**reporting** [1] - 18:4
**representation** [1] - 26:4
**representations** [1] - 30:25
**representing** [2] - 3:3, 3:4
**request** [7] - 12:6, 23:4, 39:18, 45:11, 45:18, 47:13, 48:13
**require** [1] - 39:9
**required** [1] - 53:25
**requires** [3] - 24:17, 25:22, 34:23
**requisite** [1] - 28:4, 50:14
**researched** [1] - 37:16
**reside** [2] - 45:20, 51:3
**residency** [1] - 44:23
**resolution** [1] - 42:7
**respectfully** [1] - 39:18
**respond** [1] - 41:24
**response** [1] - 50:9
**restricted** [1] - 32:5
**restrictive** [1] - 53:20
**result** [1] - 53:24
**retained** [1] - 42:19
**retains** [1] - 28:14
**return** [2] - 39:20, 47:14
**returned** [2] - 43:22, 46:23
**review** [4] - 6:5, 26:18, 26:23, 54:3
**reviewed** [1] - 28:23
**reviewing** [2] - 46:15, 46:18
**revocation** [2] -

36:18, 51:11
**rise** [2] - 27:2, 29:8, 47:18
**risk** [10] - 30:11, 30:20, 34:4, 37:2, 37:5, 39:6, 43:11, 43:13, 46:24, 48:23
**ROBIN** [1] - 1:10
**roles** [1] - 22:1
**Room** [2] - 1:24, 55:14
**rules** [6] - 18:3, 20:14, 20:16, 21:7, 21:8, 21:9
**ruling** [3] - 40:13, 54:1, 54:3
**running** [2] - 35:15, 35:18
**runs** [1] - 19:25

**S**

**SADIE** [1] - 1:6
**Sadie** [6] - 3:2, 5:3, 5:13, 6:1, 8:22, 9:23
**safe** [1] - 37:24
**safety** [4] - 45:15, 48:19, 48:22, 53:7
**satisfied** [1] - 16:21
**scared** [1] - 39:17
**SCHUCK** [1] - 1:20
**Schuck** [4] - 3:4, 44:16, 44:18, 47:10
**screen** [1] - 45:18
**screened** [1] - 45:12
**sealed** [2] - 45:6, 45:7
**seated** [1] - 4:10
**second** [5] - 12:15, 21:21, 24:20, 46:12, 49:18
**Section** [3] - 27:21, 27:23, 38:14
**see** [4] - 5:15, 17:9, 21:11, 38:5
**seek** [1] - 54:2
**seeking** [1] - 28:22
**send** [1] - 44:7
**sense** [1] - 34:22
**sent** [1] - 3:17
**sentence** [1] - 49:14
**sentencing** [1] - 36:4
**separate** [1] - 46:17
**September** [7] - 1:6, 18:15, 19:2, 44:1, 46:11, 46:17, 55:10
**serious** [2] - 50:7, 52:2
**seriousness** [2] -

49:7, 51:17
**services** [1] - 3:5
**Services** [12] - 37:9, 37:12, 39:24, 43:6, 43:9, 43:14, 44:1, 44:19, 45:10, 45:11, 46:12, 47:7
**SERVICES** [7] - 1:20, 44:18, 45:1, 45:5, 45:24, 46:5, 47:11
**serving** [1] - 34:13
**set** [17] - 3:7, 3:9, 28:25, 29:18, 31:4, 35:2, 35:10, 35:20, 36:7, 42:23, 44:1, 46:10, 46:17, 48:16, 49:22, 50:13, 53:24
**sets** [3] - 29:6, 40:23, 41:20
**several** [2] - 15:21, 26:11
**severity** [1] - 38:3
**sex** [27] - 6:2, 10:2, 16:22, 19:20, 19:22, 19:24, 20:6, 22:15, 27:19, 29:20, 31:24, 32:9, 32:15, 32:17, 32:24, 33:1, 33:10, 33:18, 33:22, 36:20, 37:21, 39:2, 49:12, 49:22, 50:17, 51:15, 52:14
**sex-trafficking** [4] - 19:24, 49:22, 50:17, 52:14
**sexual** [2] - 8:23, 25:13
**shackles** [2] - 38:5, 38:6
**shall** [1] - 5:22
**Shaner** [10] - 3:4, 23:22, 36:14, 41:7, 41:22, 42:16, 42:17, 44:24, 45:11, 45:18
**SHANER** [28] - 1:18, 1:18, 3:12, 8:5, 8:8, 11:10, 11:14, 12:6, 12:7, 12:16, 13:7, 13:9, 14:9, 15:10, 16:5, 16:8, 16:10, 16:13, 16:24, 20:15, 20:17, 20:21, 23:24, 36:15, 40:2, 40:5, 43:4, 43:8
**Shaner's** [2] - 34:18, 42:25
**shot** [1] - 25:24
**show** [6] - 6:12, 30:1, 34:15, 42:4, 46:24, 50:14, 51:10

**show-cause** [3] - 30:1, 42:4, 51:10
**shower** [1] - 38:7
**showing** [2] - 22:14, 46:13
**shown** [1] - 31:1
**shows** [3] - 20:10, 31:1, 32:11
**sic** [2] - 9:15, 13:10
**signed** [1] - 6:17
**significantly** [1] - 28:11
**similar** [1] - 17:10
**single** [1] - 14:17
**sister** [2] - 39:15, 39:24
**sister's** [1] - 37:8
**sitting** [1] - 25:10
**situation** [2] - 18:1, 34:11
**situations** [1] - 21:24
**someone** [1] - 35:13
**soon** [1] - 54:5
**sooner** [1] - 47:16
**sorry** [9] - 11:10, 13:18, 16:11, 20:21, 37:18, 40:2, 43:8, 45:25, 47:21
**sort** [2] - 32:6, 42:5
**speaks** [1] - 30:18
**special** [1] - 21:22
**specific** [2] - 12:14, 16:6
**specifically** [7] - 9:12, 21:23, 27:23, 29:13, 29:19, 31:11, 37:20
**spell** [1] - 4:14
**spoken** [2] - 24:3, 39:23
**spring** [1] - 9:22
**stage** [2] - 28:9, 28:10
**stand** [1] - 7:11
**standard** [1] - 28:11
**standards** [1] - 48:15
**standing** [1] - 20:20
**stands** [1] - 45:14
**start** [1] - 35:1
**started** [1] - 17:10
**starting** [1] - 15:12
**state** [1] - 50:14
**statement** [16] - 5:25, 6:5, 6:8, 6:16, 6:24, 15:2, 20:24, 21:11, 22:10, 26:7, 26:14, 26:19, 27:9, 28:25, 49:23, 50:13
**statements** [5] - 22:6, 25:3, 26:12,

26:13, 26:14
**STATES** [4] - 1:1, 1:3, 1:11, 1:15
**States** [8] - 1:22, 3:2, 24:24, 25:7, 27:20, 27:23, 37:3, 55:13
**states** [1] - 44:23
**status** [3] - 41:23, 46:3, 46:13
**statute** [2] - 32:5, 53:25
**statutes** [1] - 31:9
**stay** [2] - 39:10, 47:15
**staying** [1] - 54:16
**Stebbens** [7] - 12:4, 13:11, 13:15, 16:15, 16:17, 16:20, 24:8
**stenographic** [1] - 55:5
**steps** [1] - 22:11
**still** [20] - 17:22, 23:6, 31:15, 33:2, 33:12, 33:17, 33:18, 34:24, 39:12, 41:4, 41:18, 42:21, 42:22, 42:25, 45:14, 45:16, 48:7, 50:19
**stopped** [3] - 10:14, 10:17, 52:19
**street** [1] - 25:16
**Street** [3] - 1:16, 1:19, 22:16
**stress** [1] - 38:9
**stringent** [1] - 53:6
**strip** [1] - 31:24
**strong** [3] - 49:21, 50:19, 50:20
**stronger** [1] - 49:24
**strongly** [1] - 50:16
**subject** [2] - 14:11, 41:10
**submit** [1] - 8:1
**subpoena** [1] - 11:19
**subpoenaed** [3] - 18:16, 25:5, 25:6
**substantial** [1] - 53:19
**sufficient** [1] - 27:12
**suggested** [1] - 44:24
**suggestion** [1] - 53:11
**suggests** [1] - 51:5
**supervised** [2] - 37:13, 46:8
**supervision** [4] - 45:13, 45:19, 45:21, 47:2
**support** [8] - 6:1,

27:12, 28:4, 28:23,
38:25, 41:8, 50:15,
51:1
  **supporting** [1] -
23:23
  **sustain** [1] - 24:15
  **sworn** [1] - 6:17
  **SWORN** [1] - 4:8

## T

  **table** [1] - 20:20
  **Task** [1] - 4:24
  **task** [1] - 4:25
  **telephone** [4] -
13:13, 24:9, 25:17,
39:14
  **ten** [2] - 4:21, 46:21
  **term** [1] - 20:14
  **terminated** [1] -
36:25
  **terms** [2] - 36:10,
44:6
  **Terrell** [11] - 5:3,
8:10, 8:13, 9:5, 9:14,
10:13, 15:18, 17:5,
17:17, 18:4, 19:24
  **terrible** [1] - 37:5
  **terribly** [1] - 38:2
  **terrorism** [1] - 38:15
  **test** [1] - 35:19
  **testify** [8] - 11:8,
11:21, 11:24, 17:25,
18:17, 18:19, 24:22
  **testifying** [2] - 11:20,
20:17
  **testimony** [9] - 6:9,
6:13, 6:25, 20:25,
27:7, 27:9, 27:14,
48:11, 50:1
  **text** [5] - 20:10,
22:14, 24:12, 26:11,
44:7
  **THE** [82] - 1:1, 1:10,
1:11, 1:14, 1:15, 1:18,
2:5, 3:1, 3:9, 3:14,
3:19, 3:20, 3:22, 4:6,
4:7, 4:9, 5:22, 6:14,
6:20, 8:3, 8:6, 11:12,
12:17, 12:18, 12:20,
13:4, 13:8, 15:7, 16:2,
16:9, 16:12, 19:7,
19:10, 19:13, 20:19,
20:22, 23:21, 26:1,
26:16, 26:18, 27:2,
27:4, 27:6, 30:10,
30:19, 31:11, 31:17,
32:14, 33:12, 33:16,
33:25, 36:12, 36:14,

39:25, 40:3, 40:18,
41:22, 42:11, 42:14,
43:7, 43:16, 44:15,
44:18, 44:20, 45:1,
45:2, 45:5, 45:22,
45:24, 45:25, 46:5,
47:10, 47:11, 47:12,
47:18, 47:20, 47:22,
47:23, 48:2, 48:6,
48:9, 54:13
  **themselves** [1] -
34:8
  **theory** [1] - 23:18
  **thereby** [1] - 52:17
  **therefore** [1] - 45:7
  **third** [1] - 50:22
  **threat** [3] - 19:21,
39:20, 41:17
  **threatened** [3] -
25:24, 25:25, 53:12
  **threatening** [1] -
24:8
  **three** [2] - 5:1, 37:25
  **ties** [1] - 38:24
  **tilt** [1] - 50:21
  **today** [14] - 3:11,
5:15, 6:9, 6:13, 6:25,
27:16, 32:13, 36:17,
36:23, 37:6, 37:8,
37:11, 44:24, 45:2
  **took** [3] - 37:7,
37:25, 50:11
  **toward** [1] - 51:15
  **towards** [1] - 40:12
  **trade** [3] - 10:2,
16:22, 33:22
  **traffic** [2] - 20:8,
37:18
  **trafficked** [1] - 37:3
  **trafficking** [23] - 6:2,
8:13, 17:6, 17:8, 18:1,
19:24, 21:24, 22:21,
23:13, 27:19, 29:20,
31:10, 32:15, 32:17,
32:24, 36:20, 37:20,
39:2, 49:12, 49:22,
50:17, 51:15, 52:14
  **Trafficking** [1] - 4:24
  **trafficking-in-guns**
[1] - 23:13
  **transaction** [1] -
17:19
  **TRANSCRIBED** [2] -
1:11, 1:21
  **transcript** [2] - 55:5,
55:6
  **TRANSCRIPT** [1] -
1:10
  **transported** [1] -
38:4

  **transporting** [1] -
10:22
  **traumatic** [1] - 51:4
  **treatment** [4] -
36:20, 38:8, 39:2,
40:7
  **trial** [9] - 28:7, 28:12,
28:15, 28:16, 29:4,
48:14, 54:1, 54:9,
54:15
  **trigger** [1] - 49:15
  **trouble** [1] - 21:17
  **true** [2] - 55:4, 55:5
  **trust** [1] - 53:22
  **trusted** [1] - 25:11
  **try** [3] - 21:12, 31:4,
37:23
  **trying** [2] - 34:22,
37:4
  **turn** [3] - 20:12,
26:10, 28:19
  **two** [8] - 16:10,
21:14, 24:8, 27:13,
27:17, 46:10, 46:16,
46:18
  **type** [7] - 29:23,
31:6, 35:20, 36:4,
36:11, 47:3, 52:15
  **types** [1] - 35:3,
35:25, 36:9

## U

  **ultimately** [1] - 53:2
  **under** [20] - 8:14,
10:8, 14:19, 19:20,
22:24, 23:18, 28:3,
29:9, 31:9, 32:5,
32:10, 36:8, 37:15,
41:17, 42:21, 44:23,
48:15, 49:3, 53:20
  **undermine** [1] -
52:16
  **unit** [2] - 4:22, 46:12
  **UNITED** [4] - 1:1,
1:3, 1:11, 1:15
  **united** [1] - 1:22
  **United** [7] - 3:2,
24:24, 25:7, 27:20,
27:22, 37:3, 55:13
  **unlawful** [1] - 48:3
  **unsealed** [1] - 45:9
  **unspoken** [1] - 24:4
  **unsupervised** [1] -
36:19, 39:5, 46:8
  **untrue** [1] - 7:3
  **untruth** [1] - 26:9
  **up** [9] - 17:13, 19:15,
20:20, 31:1, 31:14,

34:19, 41:17, 54:10
  **US** [1] - 15:19
  **USC** [1] - 29:9
  **uses** [1] - 43:14

## V

  **venture** [1] - 19:19
  **verified** [2] - 37:11,
45:4
  **verify** [2] - 45:8,
45:10
  **versus** [1] - 3:2
  **via** [1] - 12:23
  **victim** [15] - 8:23,
9:23, 14:7, 14:11,
14:25, 19:24, 22:1,
25:12, 28:2, 34:17,
34:20, 37:21, 50:5,
51:4, 52:23
  **victimize** [1] - 52:18
  **victims** [4] - 29:20,
36:20, 37:20, 51:15
  **video** [1] - 13:14
  **violate** [1] - 15:19
  **violated** [2] - 7:22,
30:6
  **violation** [11] - 25:7,
25:21, 25:22, 27:20,
38:14, 40:8, 40:11,
43:25, 46:11, 46:12,
46:17
  **violations** [3] - 7:15,
7:18, 36:8
  **violence** [7] - 14:3,
25:13, 36:8, 38:13,
39:15, 40:12, 43:13
  **violent** [3] - 10:14,
11:8, 24:7
  **voice** [1] - 4:13
  **voluntarily** [2] -
15:17, 16:18
  **voluntariness** [2] -
50:7, 50:18
  **voluntary** [3] - 14:6,
15:5, 15:25
  **vs** [1] - 1:5

## W

  **waiting** [3] - 21:15,
42:5, 42:6
  **walk** [1] - 32:6
  **walked** [1] - 21:13
  **wants** [1] - 39:22
  **warrant** [8] - 15:1,
30:3, 43:19, 43:21,
43:23, 46:20, 46:23,
46:24

  **warrants** [2] - 43:10,
46:19
  **Washington** [5] -
1:6, 1:17, 1:19, 1:24,
55:14
  **weapons** [4] - 17:22,
21:10, 22:6, 32:16
  **wearing** [1] - 5:19
  **weigh** [2] - 49:17,
53:4
  **weighs** [4] - 49:11,
49:19, 50:16, 53:3
  **weight** [3] - 38:19,
49:5, 49:18
  **whole** [3] - 14:14,
34:16
  **willing** [3] - 14:16,
37:14
  **wish** [2] - 3:11, 3:12
  **wishes** [1] - 4:3
  **withdraw** [1] - 16:7
  **witness** [10] - 4:2,
8:2, 8:4, 9:12, 17:24,
19:12, 23:11, 24:5,
25:9, 25:25
  **Witness** [3] - 17:24,
21:2, 34:7
  **WITNESS** [1] - 4:8
  **witness's** [1] - 20:25
  **witnessed** [1] - 9:19
  **WITNESSES** [1] - 2:5
  **witnesses** [4] - 4:2,
9:12, 19:8, 25:24
  **word** [1] - 50:10
  **words** [1] - 34:18
  **wrap** [1] - 54:10
  **written** [2] - 24:13,
53:24

## Y

  **year** [3] - 9:1, 9:22,
14:22
  **years** [4] - 4:21, 5:1,
37:25
  **young** [1] - 13:23